Mabel VINSON and Don Vinson,
Her Husband, Appellants,

v.

David G. SORRELL, Appellee.

No. 2002–SC–1012–DG.

Supreme Court of Kentucky.

June 17, 2004.

James W. Lyon, Jr., Lyon & Kendall, Greenup, Counsel for Appellants.

Roger W. Hall, Catherine C. Hughes, Williams, Hall & Latherow, P.S.C., Ashland, Counsel for Appellee.

## OPINION OF THE COURT BY CHIEF JUSTICE LAMBERT.

The issue here is whether the natural father of the child whose custody is the subject of this litigation waived his superior right to custody by clear and convincing evidence. As we do not believe the clear and convincing evidence standard was met, we affirm the decision of the Court of Appeals.

The pertinent facts of this difficult custody battle are presented below. S.V. was born on January 21, 1993. Her mother, Pamela Vinson, and her father, David Sorrell, met in a prison van as they were traveling to their respective halfway houses. They lived together for several years in Cincinnati, but never married. In November of 1996, David left Cincinnati and separated from Pamela. From the time he left Cincinnati until October of 2000, David made regular monthly child support payments even though it was not required by a court order. Pamela and S.V. subsequently moved to Greenup County, Kentucky. While in Greenup County during the summer of 1999, S.V. began spending extended periods of time with her maternal grandparents, Don and Mabel Vinson (the "Vinsons").

The Vinsons filed a Verified Motion for custody in August of 2000 alleging that Pamela was an unfit custodian, but that motion did not identify David as required by KRS 403.480.[1] On January 25, 2001, David was allowed to intervene in the custody action, and on February 27, 2001, he filed a motion for custody and visitation of S.V.

The Vinsons filed a response to David's motion, and alleged that he was unfit to have custody of S.V. and that his visitation "on a temporary basis ... [should] be supervised and not overnight." On April 3, 2001, a custody hearing was held before the Domestic Relations Commissioner (DRC) of the Greenup Circuit Court. The DRC determined that Pamela's "verified and continued alcohol and drug problems, along with her other difficulties as outlined above, are the basis for the compelled finding that she is unfit and not suitable for the trust of being the custodial parent of [S.V.]" No finding of unfitness was made

---

1. KRS 403.480 is as follows:
   (1) Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:
       (a) He has participated (as a party, witness, or in any other capacity) in any other litigation concerning the custody of the same child in this or any other state;
       (b) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and
       (c) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.
   (2) If the declaration as to any of the above items is in the affirmative the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.
   (3) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during this proceeding.

with respect to David and the Court of Appeals so noted as follows: "The trial court did not find David to be unfit . . . ."

On April 6, 2001, the circuit court entered an order granting David temporary visitation with S.V. every other weekend from Friday evening until Sunday evening. On May 3, 2001, the DRC filed a report recommending that custody be awarded to Mabel and Don Vinson. The DRC pointed out that S.V. has lived "solely and continuously" with the Vinsons, and that David admitted to serving jail time for trafficking cocaine. In this proceeding, David denied any drug involvement from the time of his release in 1992. The DRC found that David had infrequent and sporadic contact amounting to about 3 to 4 annual visits with S.V. from 1996 to May of 2001. The remainder of the DRC's findings are as follows:

> The respondent now lives [with] his fiancé and has fathered another child out of wedlock. He states that they intend to be married and that this would be the home into which he is requesting that [S.V.] be placed under his care, custody and control. The evidence is uncontradicted, that while the intervening petitioner and respondent lived together there were several documented incidents of domestic violence. The respondent further admits that he pled guilty as recently as six months ago to an episode of domestic violence with his present girlfriend with whom he now lives. The intervening petitioner has paid some support to respondent during their four or five year separation, although there is no apparent court order requiring same over the past several years. The child [S.V.] has spent very little, if any, extended visitation with the respondent other than some occasional daytime visitation in this area.

The DRC found that custody of S.V. should be granted to the Vinsons on the grounds that "the intervening petitioner's lack of contact with [S.V.] from the time she moved to this area in 1996 to the present constitutes a waiver of his superior right to custody as the biological father, *Shifflet v. Shifflet*, Ky., 891 S.W.2d 392 [ (1995) ]." The DRC found that S.V. was in a stable home environment with the Vinsons and that it was in her best interests that custody be awarded to them. On June 18, 2001, the trial court confirmed the DRC's report in full.

On November 1, 2002, the Court of Appeals rendered an unpublished opinion reversing on the grounds that the "trial court's finding that David had waived his superior right to custody was not supported by clear and convincing evidence and that the award of custody to the Vinsons was an abuse of discretion." The Court of Appeals also remanded to the trial court with orders that further proceedings be conducted including an award of custody to David, visitation rights to Pamela, and child support from Pamela to David. We granted discretionary review of the decision of the Court of Appeals.

■ Appellants argue that the trial court's decision should be reinstated on the following grounds: (1) The evidence was clear and convincing in the circuit court that David waived his superior right to custody, and (2) a reviewing court cannot substitute its findings of fact for those of the trial court. Appellee, David Sorrell, counters that the Court of Appeals should be affirmed on the following grounds: (1) There was no clear and convincing evidence of waiver of his superior right, (2) Appellants failed to serve him with the petitions for emergency and temporary custody filed in August 2000, (3) Appellee paid regular child support from 1996 until late 2000, and (4) Appellee had a pending

motion for visitation when Appellants filed for custody in August of 2000.

■ Parents of a child have a fundamental, basic and constitutional right to raise, care for, and control their own children.[2] In *Moore v. Asente*,[3] this court examined how a non-parent may pursue custody. When a non-parent does not meet the statutory standard of *de facto* custodian,[4] the non-parent pursuing custody must prove either of the following two exceptions to a parent's superior right or entitlement to custody: (1) that the parent is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence.[5]

In *Fitch v. Burns*,[6] this Court examined the clear and convincing evidence standard in a custody dispute between the natural father and grandparents who had possession of the child. In *Fitch*, the trial court did not indicate the exact standard of review that was applied, but there were suggestions that the preponderance of the evidence standard was applied.[7] The court held that the clear and convincing evidence standard was required under those circumstances, and described that standard as follows:

*McCormick* states that the "phrasing within most jurisdictions has not become as standardized as is the 'preponderance' formula," and that "no high degree of precision can be obtained by these groups of adjectives." He concludes that the best formulation of the various terms that have been used to express this concept is that the trier of fact "must be persuaded that the truth of the contention is 'highly probable.' " (Citations Omitted).

We conclude that where the "burden of persuasion" requires proof by clear and convincing evidence, the concept relates more than anything else to an attitude or approach to weighing the evidence, rather than to a legal formula that can be precisely defined in words. Like "proof beyond a reasonable doubt," "proof by clear and convincing evidence" is incapable of a definition any more detailed or precise than the words involved. It suffices to say that this approach requires the party with the burden of proof to produce evidence substantially more persuasive than a

---

2. *Davis v. Collinsworth*, Ky., 771 S.W.2d 329, 330 (1989) (noting that "[t]he United States Supreme court has recognized that *parents* have fundamental, basic and constitutionally protected rights to raise their own children and that any attack by third persons (and we would include grandparents in that category) seeking to abrogate that right must show unfitness by 'clear and convincing evidence.' ")(Emphasis original).

3. *Id.*

4. KRS 403.270 provides:

As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver

for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

5. *Moore v. Asente*, 110 S.W.3d 336, 359 (2003).

6. Ky., 782 S.W.2d 618, 622 (1989).

7. *Id.*

preponderance of evidence, but not beyond a reasonable doubt.[8]

In the case at bar, the best interest of the child test appears to have been the decisional basis rather than the clear and convincing evidence standard required in custody disputes between parents and non-parents.

*Greathouse v. Shreve*[9] thoroughly discussed the issue of voluntary and intentional waiver of a parent's superior right to custody. This Court first discussed the following definition of waiver:

> The common definition of a legal waiver is that it is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon.[10]

This Court in an extended analysis examined the following requirements of a voluntary and intentional waiver:

> We believe the issue as to whether Bobby Greathouse's conduct amounted to a "voluntary and intentional surrender or relinquishment of a known right" (*Barker v. Stearns Coal,* quoted *supra* ) raises serious and complex questions about the nature of the father's acquiescence in custody by the grandmother, and about the extent and duration of such acquiescence, all of which bear upon whether the waiver principle should apply here... We recognize that, at present, in usual circumstances grandparents must realize, when they take in a grandchild to care for, that agreeing to care for a grandchild is a temporary arrangement, not a surrender of custody, re-

gardless of the quality of care and the bonding that follows. A short term visit or delivery of possession shall not be construed as proof a knowing and voluntary waiver has occurred.

\*   \*   \*   \*   \*   \*

What evidence constitutes proof a parent, who is not proved unsuited to the trust (KRS 405.020(1)), has waived his or her superior custodial right when that right is challenged by a non-parent? As stated above, waiver requires proof of a "knowing and voluntary surrender or relinquishment of a known right." Because this is a right with both constitutional and statutory underpinnings, proof of waiver must be clear and convincing. As such, while no formal or written waiver is required, statements and supporting circumstances must be equivalent to an express waiver to meet the burden of proof.[11]

Without a finding that the parent is unfit or without clear and convincing evidence of a knowing and voluntary surrender of parental rights, a parent is entitled to custody.[12]

The recommendation of the DRC and the decision of the trial court fail to demonstrate that David Sorrell expressly or intentionally relinquished his parental right to custody of his child. Case law clearly demonstrates that allowing S.V. to live with her grandparents and David's sporadic participation in S.V.'s upbringing does not constitute express waiver.[13]

The Court of Appeals relied in part on the factors set forth in Justice Spain's

---

8. *Id.*

9. Ky., 891 S.W.2d 387, 390 (1995).

10. *Id.* at 390 (*quoting Barker v. Stearns Coal & Lumber Co.,* 291 Ky. 184, 163 S.W.2d 466, 470 (1942)).

11. *Id.* at 390–91.

12. *Diaz v. Morales,* Ky.App., 51 S.W.3d 451, 454 (2001).

13. *Greathouse,* 891 S.W.2d at 390.

concurring opinion in *Shifflet v. Shifflet.*[14] Those factors are length of time the child has been away from the parent, circumstances of separation, age of the child when care was assumed by the non-parent, time elapsed before the parent sought to claim the child, and frequency and nature of contact, if any, between the parent and the child during the non-parent's custody.[15] Applying these factors, the Court of Appeals noted that while David did not visit with S.V. for significant periods, he attempted some visits. There was evidence that the Vinsons thwarted his efforts and that Pamela was not agreeable to David visiting with S.V.

A factor that weighs in David's favor is that he paid child support without a court order for about four years. The Vinsons sought custody in August of 2000 and only a few months elapsed without payment. S.V. had been living with the Vinsons for only two months before David sought to intervene and obtain custody. Moreover, David had a pending motion for visitation when the Vinsons filed for custody in August of 2000. These actions are wholly inconsistent with a waiver of David's superior right to custody of his child.

From the evidence of David's attempts to obtain visitation rights and custody of his daughter, the difficulties he experienced in establishing contact with her, and his regular payment of child support, it cannot be said that he expressly waived his right to custody.

■ In response to Appellants' claim that the Court of Appeals substituted its findings for those of the trial court, we note that a reviewing court is entitled to set aside the trial court's findings when those findings are clearly erroneous.[16] To determine whether findings are clearly erroneous, reviewing courts must focus on whether those findings are supported by substantial evidence.[17] In *Moore v. Asente,*[18] this Court defined substantial evidence as follows:

"[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence. (Citations omitted).[19]

Upon review of the evidence underlying the findings of the DRC and adopted by the trial court, we agree with the Court of Appeals that there was not substantial evidence to meet the stringent requirements of waiver.

■ Finally, we may not consider whether David was an unfit parent. Although the Vinsons alleged unfitness, no such finding was made in the trial court, a

14. 891 S.W.2d 392.

15. *Id.* at 397.

16. CR 52.01.

17. *Moore,* 110 S.W.3d at 354.

18. *Id.*

19. *Id.* at 353–54.

fact noted by the Court of Appeals. It is fundamental that a party who asserts a claim must prove that claim to the satisfaction of the trier of fact, and on failure of the fact-finder to rule on the contention, the pleading party must seek a ruling from the trial court by means of a request for additional findings of fact.

> In particular, CR 52.04 requires a motion for additional findings of fact when the trial court has failed to make findings on essential issues. Failure to bring such an omission to the attention of the trial court by means of a written request will be fatal to an appeal. *Cherry v. Cherry.* Ky., 634 S.W.2d 423 (1982). The thread which runs through CR 52 is that a trial court must render findings of fact based on the evidence, but no claim will be heard on appeal unless the trial court has made or been requested to make unambiguous findings on all essential issues. . [20]

As the trial court did not find David to be unfit, we may assume that there was insufficient evidence of unfitness or that the Vinsons abandoned the claim. In either event, whether David was unfit was not preserved for appellate review. As such, there is no basis to remand the question of unfitness to the trial court.

> Accordingly, we affirm the Court of Appeals.

COOPER, GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., files a separate opinion concurring in part and dissenting in part in which STUMBO, J., joins.

Opinion by Justice JOHNSTONE concurring in part and dissenting in part.

To the extent the majority affirms the Court of Appeals' decision that the trial court clearly erred in finding that David Sorrell "waived" his superior right to custody, I concur. The finding simply was not supported by clear and convincing evidence. Accordingly, the trial court incorrectly relied on David's "waiver" as a basis to utilize the "best interest of the child" standard to determine custody as between the father and the maternal grandparents.

However, I respectfully disagree with the majority inasmuch as it affirms the Court of Appeals' decision to remand this case to the trial court directing "further proceedings . . . including an award of custody to David, visitation rights to Pamela, and child support from Pamela to David." *Op.* at 467.

As the majority points out, when a non-parent does not meet the statutory standard of a *de facto* custodian, in order to defeat a parent's superior right or entitlement to custody, the non-parent must prove by clear and convincing evidence that the parent is "unfit" or has "waived" his or her superior custody rights. *See Moore v. Asente,* Ky., 110 S.W.3d 336, 359 (2003). Under the unfitness exception, "the nonparent must first show by clear and convincing evidence that the parent has engaged in conduct similar to activity that could result in the termination of parental rights by the state. Only after making such a threshold showing would the court determine custody in accordance with the child's best interest." *Moore,* 110 S.W.3d at 360. In the present case, the Vinsons allege that David is unfit to have custody of S.V.

---

**20.** *Eiland v. Ferrell,* Ky., 937 S.W.2d 713, 716 (1997); *see also Jones v. Jones,* Ky.App., 577 S.W.2d 43 (1979) (holding that in a custody dispute where the trial judge did not make a finding and the mother failed to request a finding of fact as to her fitness, CR 52.04 prohibits reversal or remand on this ground).

Citing CR 52.04, *Eiland v. Ferrell,* Ky., 937 S.W.2d 713 (1997), and *Jones v. Jones,* Ky.App., 577 S.W.2d 43 (1979), the majority concludes that further consideration of the unfitness issue is prohibited. Under the facts and circumstances of this case, I disagree. In *Eiland,* a party was precluded from appeal due to an untimely objection to a monetary award. In *Jones,* the unsuccessful mother attempted to appeal a custody award without having sought more definite reasons for the custody ruling. In the cited cases, it was the unsuccessful litigants below that were required to seek more exacting findings from the trial court. It seems that to require successful litigants, such as the Vinsons, who were awarded custody by the trial court, to seek additional findings regarding the unfitness of the father when they prevailed on the waiver issue in the trial court invites judicial waste. The majority's assumption that there was insufficient evidence of unfitness or that the Vinsons abandoned the claim is unfounded. At the trial court level, it was determined that "[Pamela's] verified and continued alcohol and drug problems along with her other difficulties as outlined above [including 4–5 felony drug convictions, manic depression, bi-polar disorder, and a substantiated incident of child neglect regarding S.V.] are the basis for the compelled finding that she is unfit and not suitable for the trust of being the custodial parent of [S.V.]." The trial court further found that David admitted to serving time for trafficking in cocaine, that there was uncontroverted evidence of domestic violence between David and S.V.'s mother, Pamela, when they lived together, and that there was a recent episode of domestic violence between David and his current girlfriend with whom he shares a home to which he intends to move S.V.

When, as in the present case, there exists a legitimate question as to the fitness of a parent seeking custody, the court has an obligation to consider the issue in determining custody. The court has a role in protecting the welfare of this child.

For the reasons stated, I would remand this case to the trial court for further consideration of all relevant factors and circumstances as they presently exist and for a determination on the custody issue consistent with the principles set forth in this opinion. If the trial court is persuaded by clear and convincing evidence that David is unfit and not suited to the trust, then custody may be decided on what is in the child's best interest. Absent a determination that David is unfit, his superior right to custody should prevail.

STUMBO, J., joins.