RENDERED: OCTOBER 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0612-MR

AMBER LITTLETON                                           APPELLANT

v.                    APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE STEPHEN M. JONES, JUDGE
ACTION NO. 19-CI-00087

KELLI JO STEWART AND GENE
WILLIAMS                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

ACREE, JUDGE: Amber Littleton appeals the Laurel Circuit Court order denying her custody of Kelli Jo Stewart's and Gene Williams's biological child. Amber contends Kelli and Gene waived their superior rights to custody and argues the circuit court did not rule in the child's best interest. Finding no error, we affirm.

## BACKGROUND

Kelli and Gene "were never really a couple" although "they had tried but it didn't work out." (Record (R.) 187.) However, what matters here is that in July 2017, Kelli became pregnant with Gene's child. Roughly a month later, on August 18, 2017, Amber and Kelli met and soon began a romantic relationship. At all times, Amber knew Gene was the father of Kelli's child. In late November 2017, Amber and Kelli moved in together.

Five months later, Kelli gave birth to a baby boy. Gene was not there because Amber convinced Kelli not to tell him where she was.

Not long after the child's birth, Kelli underwent an unrelated, minor surgical procedure. Although the procedure posed little or no risk of death, Amber urged Kelli to sign a statement that, if she should not survive surgery, Amber was to care for the child. When Kelli survived the surgery, Amber consulted legal counsel about obtaining custody of Kelli's and Gene's child.

Legal counsel relied on a doctrine in *Mullins v. Picklesimer*, 317 S.W.3d 569, 579 (Ky. 2010), describing a "waiver of some part of custody rights" to induce the circuit court to enter an agreed order granting joint custody to Amber and Kelli only. Amber's counsel followed *Mullins*' guidance and prepared several documents for simultaneous filing with the court: a "Verified Petition for Custody" which Amber signed; an "Entry of Appearance" which Kelli signed, *pro*

*se*; and an "Agreed Joint Custody Order" which both signed. Counsel filed the pleadings and tendered the agreed order in Laurel Circuit Court on October 31, 2018, thereby initiating the case of *Amber Littleton v. Kelli Stewart*, No. 18-CI-00918 (Laurel Circuit Court) (hereafter, *Littleton I*). Twenty days later, the clerk entered the custody order and sent copies to Kelli and Amber.[1] (R. 172-174.)

As we now know, the crucial representations in the verified petition are lies purposefully intended to deceive the court. The identity of the biological father was never "unknown"; the child was not "conceived through artificial insemination upon agreement of the parties to parent the child together"; and Gene had a "right to custody of the minor child . . . ." (R. 173.)

Amber received a copy of the custody order on November 28, 2018, and immediately began filing petitions for emergency protective orders with the goal of obtaining sole custody, but the petitions were all summarily denied.[2] That same day, Amber called the police and falsely claimed Kelli was trafficking marijuana out of the home in front of their child. When the police arrived, Kelli was cooking dinner and not under the influence. But, the police found a small amount of marijuana, resulting in Kelli being charged with a misdemeanor and

---

[1] The docket entry confirms that the clerk entered the order and distributed copies to counsel, but the judge's signature does not appear on the copy in this record. (R. 174.)

[2] As noted below, an emergency protective order (EPO) was eventually entered but there was no grant of custody to Amber.

given a summons. No evidence was found of trafficking, and Kelli never received jail time because of the incident.

Four days later, December 2, 2018, Kelli planned to take the child to her father's birthday party, but Amber thwarted those plans by again involving the police. This time, she told the police she intended to leave home with the child and her departure might result in violence. When an officer arrived, Amber showed him the joint custody order and he allowed her and the child to leave. They went to Georgia where Amber's parents reside but returned less than two weeks later.

On December 14, 2018, Amber went to Kelli's workplace. She let Kelli see the baby but would not let her hold the baby or take him from the car seat. Instead, Amber drove the parking lot in circles with Kelli as a passenger. When Kelli attempted to unbuckle the child, Amber became irate, stopped the car, and tried to choke Kelli. After Kelli left the vehicle, Amber obtained an EPO.[3] She then returned with the baby to Georgia.

A week later, Kelli retained her own lawyer who filed a CR[4] 60.02 motion to set aside the agreed custody order as having been obtained by fraud and because of the failure to join an indispensable party–Gene. That same day, Amber filed a motion to modify and for temporary custody.

---

[3] The EPO was dismissed by agreement of the parties. (R. 181.)

[4] Kentucky Rules of Civil Procedure.

The issue of Amber's standing to petition for custody also arose. The court's docket sheet in *Littleton I* indicates Kelli waived objection to Amber's standing in that case, but Kelli, who was not represented then by counsel, denied waiving standing or even understanding the legal concept.

The court set aside the custody order. Despite Kelli not having any visitation with her child for more than 30 days, including the baby's first Christmas, Kelli agreed to joint custody and equal timesharing with Amber until a final hearing could resolve all the issues.

On January 28, 2019, Amber initiated a second custody action by filing another verified petition for custody. Again, she relied on *Mullins* to claim standing as a person acting as a parent, and claiming custody based on Kelli's and Gene's unfitness as parents and their respective waivers of their superior right to parent their child. (R. 2, 3.) Kelli responded, by counsel, asking the court for an award of sole custody. (R. 40.) Gene, acting *pro se*, asked the court to award him and Kelli joint custody. (R. 77.) Discovery commenced.

In October 2019, the circuit court conducted a final hearing. The court entered its 20-page findings and order on February 12, 2020. After thoroughly summarizing the testimony and other evidence, the circuit court concluded as follows:

-5-

1.  Regarding Amber's claim of unfitness, the court said, "[T]here was no evidence offered that either Gene Williams or Kelli Stewart are unfit parents." (R. 191);

2.  The court addressed Amber's claim of waiver against Gene, noting Gene's attempts to parent were thwarted by Amber's instruction to Kelli "to have no contact with Gene." (R. 191). Ultimately, the court concluded, "There is no evidence that Gene Williams has waived his superior right to parent [his child]." (R. 191);

3.  As for Amber's claim that Kelli waived her parental right, either completely or partially (under *Mullins*, *supra*), the court said Amber engaged in "manipulative and bullying behavior" and her "[f]iling [of] false claims" against Kelli "shows malice"; that Amber "continued her deceptive conduct up through December 2018" making false representations to satisfy the *Mullins* criteria, and that her other "adversarial actions lends strong credibility to Kelli Stewart's claim that she was bullied by Amber Littleton." (R. 192-193). Then, the court stated it "could not find that Kelli Stewart's action in this case, including her signing the prior custody order that was ultimately set aside, is [the legal equivalent of] an express waiver[5] of her superior right to parent the minor child proven by clear and convincing evidence." (R. 193.)

The circuit court denied Amber's petition and awarded Gene and Kelli joint custody of the child. Amber appealed.

---

[5] "A written, formal waiver is not required; nonetheless, 'statements and supporting circumstances must be equivalent to an express waiver to meet the burden of proof.'" *Penticuff v. Miller*, 503 S.W.3d 198, 203 (Ky. App. 2016) (citing *Mullins*, 317 S.W.3d at 578 (quoting *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky. 2004))).

## ANALYSIS

Amber does not challenge the circuit court's conclusions that neither Kelli nor Gene is unfit to parent their child. Rather, she claims the circuit court abused its discretion when it failed to conclude clear and convincing evidence proved both Kelli and Gene voluntarily and intentionally waived their respective superior rights to parent their child. We disagree.

"Whether a parent waives his or her superior custody right is a factual finding that is subject to the clearly erroneous standard of review." *Penticuff*, 503 S.W.3d at 204 (citing *Mullins*, 317 S.W.3d at 581). "To determine whether findings are clearly erroneous, reviewing courts must focus on whether those findings are supported by substantial evidence." *Id.* (quoting *Mullins*, 317 S.W.3d at 581 (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003))).

We immediately reject any pretense that Amber satisfied the criteria identified in *Mullins* for awarding her custody. With confidence in *Mullins*, Amber verified her petition to gild multiple lies as her solemn oath to a court. *Bryant v. Allstate Indemnity Company*, 519 S.W.3d 401, 406 (Ky. App. 2017) ("Verification is the confirmation of the correctness, truth, or authenticity of a pleading by affidavit, oath, or deposition."). The need for those lies is consistent with the understanding that the *Mullins* criteria applies only "when the child was conceived by artificial insemination with the intent that the child would be co-

parented by the parent and her [same-sex] partner . . . ." *Mullins*, 317 S.W.3d at 575. That Amber lied when she falsely swore to such a claim is not in dispute, but those lies will not support the doctrinaire benefits of *Mullins*' holding here.

Amber may have challenged the further fact that she bullied Kelli to bow to her will, but the overwhelming evidence supports that conclusion. It also supports the factual finding that Kelli's actions, which Amber claims supports waiver, were not voluntary. That finding is not clearly erroneous.

The factors set forth in *Vinson v. Sorrell*, 136 S.W.3d 465 (Ky. 2004), for determining whether a parent waives superior custody rights do not contemplate these precise circumstances. Consider *Vinson*'s first factor, for example–the length of time the child spent away from the parent. *Id.* at 470. Knowing now that the joint custody order was fraudulently procured, and that Amber had no right to custody when she left with the child for Georgia, puts a different gloss on the length of time Amber kept the child away from Kelli (32 days). *See* 18 U.S.C.A.[6] § 1201(a)(1) (Kidnapping occurs when one "carries away . . . any person, . . . [other than] a minor by the parent thereof, when . . . the person is willfully transported in interstate or foreign commerce . . . .").

Given the circuit court's finding that Amber's conduct descended into malice, the other *Vinson* factors–circumstances of separation of Kelli and child; the

---

[6] United States Code Annotated.

child's age; time elapsed before the parent sought to claim the child; frequency and nature of contact between Kelli and the child–all weigh in Kelli's favor. *Vinson*, 136 S.W.3d at 470. The circuit court's conclusion that Kelli did not voluntarily and intentionally waive her superior right to custody is not clearly erroneous but is supported by substantial evidence.

The same could be said for Gene. The circuit court found, and substantial evidence supports the finding, that Amber intimidated Kelli to keep Gene away from his child despite "attempts by Gene to contact Kelli Stewart." (R. 191.) When finally given the opportunity,[7] Gene willingly acknowledged paternity. Once Amber's influence over Kelli was removed, Gene was able to visit and even exercise physical custody of the child. (R. 191.) We find no error in the circuit court's conclusion that there was no evidence that Gene waived his superior right to parent his son.

Lastly, Amber argues the circuit court erred in another way. Claiming standing based on *Mullins*' application of the Uniform Child Custody Jurisdiction and Enforcement Act as a person acting as a parent, KRS[8] 403.800(13), Amber argues she is the equivalent of a *de facto* custodian entitled to demand application of KRS 403.270(2). But the statute does not say that. Instead, it begins with

---

[7] This case was initiated with, and court records reflected, an incorrect address for Gene.

[8] Kentucky Revised Statutes.

language that disqualifies Amber: "The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any *de facto* custodian." KRS 403.270(2). Amber is neither a parent nor a *de facto* custodian. *Mullins* did not, and could not, add language to that statute to include persons who can claim no more than satisfaction of the statutory definition of a person acting as a parent. "Where a statute is intelligible on its face," as this statute clearly is, "the courts are not at liberty to supply words or insert something or make additions . . . ." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky. 2000). Even though the circuit court addressed this argument,[9] we need not entertain it any further.

## CONCLUSION

Based on the foregoing, we affirm the Laurel Circuit Court's February 12, 2020 order denying Amber custody of the Kelli and Gene's child.

ALL CONCUR.

---

[9] The circuit court held that, although it found no waiver that would have put Amber on equal legal footing with Kelli and Gene, "the Court believes . . . it would have not been in the best interest of [the child] for the three parties to share custody. . . . [T]he conduct of Amber Littleton in obtaining this child shows bad faith on her behalf and improper motive and emotionally damaging actions to a child. Furthermore, . . . Amber Littleton lacks stability having lived in numerous states, so many she couldn't remember them all. Her work history shows instability with numerous jobs and long episodes of unemployment. The testimony [of two witnesses] indicate troubling behavior that Amber Littleton had exhibited against children and intimate partners in the past. Amber Littleton had lost a job at an elder care facility due to allegations of abuse to a vulnerable person." (R. 193-194.) Even if Amber had been "a candidate for custody, the Court does not believe that it would be in the best interest of the minor child herein that she have custody of the minor child." (R. 194.)

BRIEFS FOR APPELLANT:

Brittany N. Riley
London, Kentucky

BRIEF FOR APPELLEE KELLI JO
STEWART:

Mary-Ann Smyth
Corbin, Kentucky