RENDERED: SEPTEMBER 23, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1243-MR

ROBERT CORBIN                                                    APPELLANT

v.       APPEAL FROM CLARK CIRCUIT COURT
HONORABLE NORA J. SHEPHERD, JUDGE
ACTION NO. 20-CI-00404

GERRI MULLINS AND TAMARA                                   APPELLEES
CZECH

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND K. THOMPSON, JUDGES.

GOODWINE, JUDGE: Robert Corbin ("Father") appeals the September 29, 2021

order of the Clark Circuit Court, Family Division. After careful review, we affirm.

This matter was preceded by two dependency, neglect, and abuse

("DNA") cases initiated by the Cabinet for Health and Family Services ("Cabinet")

in June 2019. At that time, the Cabinet removed the two children, who were then

two and five years of age, from the custody of Tamara Czech ("Mother") due to

concerns of substance abuse.[1]  The Cabinet placed the children in Father's care on June 19, 2019.  Father then voluntarily placed the children in the care of their maternal grandmother, Gerri Mullins ("Grandmother"), on July 19, 2019.  In the DNA actions, the family court granted Grandmother temporary custody on August 8, 2019.

Father was uninvolved in the DNA actions but agreed to a case plan with the Cabinet due to concerns of domestic violence.  He did not complete the case plan but sporadically visited with the children for more than a year.  He then filed a motion in the DNA cases requesting the children be returned to his custody.  Grandmother subsequently initiated this action by filing a petition for custody.  After a hearing, the family court determined Grandmother met the requirements of KRS[2] 403.270(1)(a) to be the children's *de facto* custodian.  The court further concluded Father waived his superior right to custody.  The court awarded Grandmother sole custody of the children and Father received visitation every other weekend and on holidays as agreed upon by the parties.

This appeal followed.  Additional facts will be developed as needed in our analysis below.

---

[1] After entering her appearance, Mother did not participate in this case before the family court and has not participated on appeal.

[2] Kentucky Revised Statutes.

We may only set aside a family court's findings of fact where they are clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted). Findings are clearly erroneous where they are not supported by substantial evidence. *Id.* Substantial evidence is defined as that which "a reasonable mind would accept as adequate to support a conclusion[.]" *Id.* Mere doubt by an appellate court is insufficient to disturb findings of fact which are supported by substantial evidence. *Id.*

On appeal, Father argues: (1) the family court's determination that Grandmother met the requirements of KRS 403.270(1)(a) was not supported by substantial evidence; and (2) the family court clearly erred in finding Father waived his superior right to custody of the children.

A *de facto* custodian is

[a] person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who within the last two (2) years has resided with the person for an aggregate period of six (6) months or more if the child is under three (3) years of age and for an aggregate period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

KRS 403.270(1)(a). Once a person has met the requirements of KRS 403.270(1)(a), the family court "shall give the person the same standing in custody matters that is given to each parent[.]" KRS 403.270(1)(b).

Here, both children are at least three years of age and have resided with Grandmother since they were placed in her care by Father on July 19, 2019. Thereafter, on August 8, 2019, she was given temporary custody of the children in the related DNA actions. On August 14, 2020, more than a year after the children began residing with Grandmother, Father filed a motion for sole custody in the DNA cases.

During the hearing, much of Father and Grandmother's testimony conflicted, requiring the family court to judge their credibility. "[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore*, 110 S.W.3d at 354 (footnote omitted). Here, the court found Father's testimony lacked credibility because "[w]hen he should have acknowledged he did not act appropriately or could have done better, he tended to blame others and, otherwise, always had an excuse for everything, an excuse that usually involved someone else's failing without acknowledging his primary responsibility as a parent." Record ("R.") at 83-84. On this basis, the court gave greater weight to Grandmother's version of events where the two gave

conflicting testimony. We will not disturb the family court's decision as to credibility of the witnesses. *Moore*, 110 S.W.3d at 354 (footnote omitted).

Clear and convincing evidence supports the family court's finding that Grandmother was the primary caregiver and financial supporter of the children during the relevant period. Grandmother provides the majority of the children's day-to-day care. She ensures they receive medical and dental care and attends to their educational needs. Grandmother potty-trained both children. She enrolled the youngest child in kindergarten and, when the oldest child's school was shut down during the COVID-19 pandemic, Grandmother managed the child's virtual learning.

Father began visiting with the children in February 2020. According to Grandmother's testimony, he visited the children sporadically from February until August 2020. During some visits, he demanded Grandmother pick the children up early. Grandmother had to provide Father with clothing and other necessities for the children during some visits. He began consistently seeing the children when he was granted visitation on every other weekend in September 2020, after this case was initiated.

Although he visits with the children, Father has been largely uninvolved with their education and medical care.[3] He could not identify the

---

[3] Father attended one school event with the children.

children's doctors, dentist, school, daycare, or teachers. He could not name the children's medication. He did not know the sizes of the children's clothing. Although both Father and Grandmother are employed, Father justified his lack of involvement by claiming he often had to work when the children had appointments or other obligations. Father did not complete his case plan for the Cabinet.

Grandmother has been the primary financial supporter for the children since they entered her care. The family court was largely unconvinced by Father's claims that he provided financial support. Father purchased some wipes and diapers, and once gave Grandmother twenty dollars. He also purchased the children Christmas gifts in 2019. Grandmother had to provide Father with car seats when he began exercising visitation. Father did not reimburse Grandmother and she was forced to purchase new car seats for herself. Although Father has beds for the children and provides food for them during his visits, Grandmother provides clothing for the children at Father's request.

Father's lack of support has left Grandmother to purchase most of the children's clothing, hygiene items, and other necessities. Grandmother has maintained stable housing for the children. She applied for the children's social security numbers. She has maintained their medical cards, daycare assistance, and WIC and KTAP benefits.

The family court's findings of fact are clearly supported by substantial evidence. Grandmother met her burden under KRS 403.270(1)(a) to be named the children's *de facto* custodian.

Substantial evidence also supports the family court's conclusion that Father waived his superior right to custody of the children.[4] "Parents of a child have a fundamental, basic, and constitutional right to raise, care for, and control their own children." *Mullins v. Picklesimer*, 317 S.W.3d 569, 578 (Ky. 2010) (citation omitted). However, a nonparent may seek custody by proving an exception to the parent's superior right. *Moore*, 110 S.W.3d at 359. The nonparent must prove by clear and convincing evidence that either (1) the parent is unfit or (2) the parent waived his or her superior right to custody. *Id.* (footnote omitted).

To prove waiver, the nonparent must prove the parent acted knowingly, voluntarily, and intentionally in waiving his or her superior right to custody. *Penticuff v. Miller*, 503 S.W.3d 198, 205 (Ky. App. 2016) (citation omitted). "Because this is a right with both constitutional and statutory underpinnings, . . . while no formal or written waiver is required, statements and supporting circumstances must be equivalent to an express waiver to meet the

---

[4] The family court was not required to find Father waived his superior right to custody because its findings under KRS 403.270(1)(a) are sufficient for the court to award Grandmother custody of the children.

burden of proof." *Mullins*, 317 S.W.3d at 578 (citation omitted).  Some factors a court should consider include:  (1) time the child has been away from the parent, (2) circumstances of separation, (3) age of the child when care was assumed by the nonparent, (4) time elapsed before the parent sought to claim the child, and (5) frequency and nature of contact, if any, between the parent and the child during the nonparent's custody.  *Vinson v. Sorrell*, 136 S.W.3d 465, 470 (Ky. 2004) (footnote omitted).

Here, the children were two and five when they were placed in Grandmother's care, ages the family court found to be "critical stage[s] of their development."  R. at 91.  Although the children have only been in Grandmother's primary care for approximately a year, Father had irregular contact with the children for more than a year prior to Grandmother's receiving custody.  Grandmother cared for them for long periods of time prior to receiving temporary custody.  The children were separated from Father by his own intentional and voluntary action.  He then had very little contact with the children for approximately seven months before initiating sporadic visitation.  He did not seek return of the children for more than a year.  He also provided minimal financial or material support for the children for more than a year.  Ultimately, Father knowingly, voluntarily, and intentionally left the children in Grandmother's care waiving his superior right to custody.

Based on the foregoing, we affirm the order of the Clark Circuit Court, Family Division.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James O'Toole
Lexington, Kentucky

BRIEF FOR APPELLEE:

Nanci M. House
Winchester, Kentucky