RENDERED:  MAY 5, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0698-MR

JAMES HARRIS                                                                     APPELLANT

v.
APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE GREGORY A. LAY, JUDGE
ACTION NO. 14-CR-00199-003

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, EASTON, AND ECKERLE, JUDGES.

COMBS, JUDGE:  Appellant, James Harris, appeals from an Order of the Laurel

Circuit Court denying his RCr[1] 11.42 motion to vacate his judgment of conviction

following an evidentiary hearing.  After our review, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

The underlying facts are set forth in the direct appeal, *Harris v. Commonwealth*, No. 2015-SC-000688-MR, 2016 WL 7665871 (Ky. Dec. 15, 2016), as follows in relevant part:

> Stephen [a pseudonym for the victim] was five or six years old when his mother and stepfather first took him to James Harris's home, where a course of sexual conduct would commence during the ensuing four years.
>
> . . . .
>
> Harris, [Stephen's mother, and stepfather] were all indicted. [Stephen's mother and stepfather] were charged with multiple counts of human trafficking, in addition to first-degree complicity to sodomy. Harris was indicted on several counts of first-degree sodomy.
>
> At trial, the Commonwealth offered testimony from Elvis Proffitt -- an inmate who shared a cell with Harris. After Proffitt's attorney contacted law enforcement, Proffitt agreed to wear a wire, and recorded a conversation with Harris. In the conversation: Harris referred to Stephen by name; he confirmed that [the stepfather] would trade Stephen for drugs; that [the stepfather] would "shoot them up" and then they [Stephen and Harris] "would fuck." Proffitt admitted at trial that he received assistance from the Commonwealth in his pending cases for agreeing to help, but denied any undue influence in obtaining Harris's confession.
>
> Harris contended at trial that Proffitt had drugged him and coerced him into making the incriminating statements and continued to deny the allegations levied against him. The jury ultimately convicted [Harris] on two counts of first-degree sodomy and sentenced him to fifty years' imprisonment.

-2-

*Id.* at \*1-2.  Harris appealed and contended that the trial court erred in allowing testimony about his cross-dressing and by allowing the Commonwealth to introduce evidence of charges of co-defendants, whose prosecution was severed from his.  The Kentucky Supreme Court affirmed.

On January 29, 2019, Harris, *pro se*, filed a motion to vacate his sentence pursuant to RCr 11.42 alleging ineffectiveness of counsel.  The circuit court[2] granted Harris's request for an evidentiary hearing and appointed counsel.  Appointed counsel subsequently filed a supplemental motion to vacate.  On February 18, 2020, the circuit court conducted an evidentiary hearing.  Defense trial counsel, Harris's sister, the DPA[3] investigator, and Harris all testified.

**The Circuit Court's Order Denying Harris's RCr 11.42 Motion**

By Order entered on August 25, 2021, the circuit court denied Harris's motion as follows:

> Movant claims that Hon. Cotha Hudson did not perform adequately as counsel.  Movant brings forth seven (7) arguments as to why he was denied adequate counsel.  These arguments include:  (1) counsel failed to properly advise Movant during plea negotiations; (2) counsel failed to investigate and present witnesses in support of Movant's defense; (3) counsel failed to attempt to neutralize the prejudicial effect of Movant's cross-

---

[2] References to the "circuit court" refer to the Laurel Circuit Court when it ruled on Harris's RCr 11.42 motion.  References to the "trial court" refer to the Laurel Circuit Court prior to the filing of said motion.

[3] Department of Public Advocacy.

dressing; (4) counsel failed to object to mentioning of severed co-defendants' charges at trial; and (5) counsel failed to object to alleged prosecutorial misconduct during closing arguments; (6) counsel was unprepared for the penalty phase of trial; and (7) the cumulative effect of counsel's errors rendered Movant's proceedings fundamentally unfair.

The circuit court discussed the applicable law; *i.e.*, that an RCr 11.42 movant has the burden of satisfying the two-pronged *Strickland*[4] standard requiring that he show that defense counsel's representation fell below an objective measure of reasonableness and that counsel's errors prejudiced the outcome of the trial. There is a strong presumption that counsel was effective and that the challenged conduct may be sound trial strategy. The circuit court then addressed each of Harris's claims as follows:

## 1. Failure to properly advise during plea negotiations

The circuit court found Attorney Hudson's testimony to be credible and concluded that she acted competently in advising Harris of the plea offer.[5]

## 2. Failure to investigate and present witnesses in defense

The circuit court found no deficiency in Attorney Hudson's investigating and calling witnesses in Harris's defense. The court explained that it is duty of a lawyer to promptly investigate the circumstances of a case and attempt

---

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[5] Harris appears to have abandoned this issue on appeal.

to find relevant facts, citing *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 2466, 162 L. Ed. 2d 360 (2005).  The circuit court noted that the DPA had assigned an investigator to assist defense counsel with the case.  The circuit court found that Attorney Hudson investigated the victim's siblings and determined that they were of no assistance.  It also found that Attorney Hudson considered calling the co-defendants.  However, their case was still pending, and their attorney advised that if called as witnesses, they would invoke the privilege not to testify.  She also interviewed Harris's brother, who offered no helpful information and made it clear that he wanted no part of the trial.  The court concluded that Attorney Hudson performed her essential functions and acted reasonably.

### 3. **Failure to neutralize prejudicial effect of movant's cross-dressing**

Harris alleged four separate instances where Attorney Hudson was ineffective by failing to neutralize any prejudicial effect of his cross-dressing:

**a. *Voir Dire*:**  Harris claimed that Attorney Hudson did not adequately or effectively question the panel during *voir dire*.  The circuit court explained that Attorney Hudson had advised the jury that the Commonwealth would introduce evidence that Harris was a cross-dresser.  She then asked if that would cause a juror to decide that Harris was guilty -- even if the Commonwealth failed to prove guilt beyond a reasonable doubt.  None of the jurors raised a hand in response.  At the evidentiary hearing, Attorney Hudson testified that she did not go into further

detail because she thought it would only emphasize the issue and inflame the jury against Harris. The circuit court concluded that the record and testimony at the hearing showed that Attorney Hudson "consciously and intentionally considered how to address the cross-dressing issue . . . [and] fulfilled her duty by asking the question referred to above, and her decision to delve no further into the matter was sound trial strategy."

**b. Failure to object to improper testimony**: Harris claimed that he was unduly prejudiced when Attorney Hudson failed to object to Detective Allen's testimony regarding Harris's cross-dressing and failed to preserve the issue for appeal. The circuit court concluded that this claim lacked merit. Attorney Hudson had preserved the issue in a pretrial motion *in limine*, which the trial court denied. The issue was raised on direct appeal, and the Supreme Court determined that the evidence was admissible under KRE[6] 404(b)(1) to establish Harris's identity; *i.e.*, the victim remembered that the man who assaulted him was wearing a sundress. The Supreme Court concluded that the trial court committed no error in allowing the testimony and affirmed. Consequently, the circuit court determined Attorney Hudson did not act deficiently by failing to object to it.

**c. Failure to retain a mental health expert**: Harris claimed that Attorney Hudson should have retained a mental health expert in order to discredit

[6] Kentucky Rules of Evidence.

-6-

any theory that cross-dressing was related to pedophilia. The circuit court explained that the issue "was unsupported by sufficient details to enable . . . the court to properly address it[,]" and it was not raised by Harris at the evidentiary hearing.

**d. <u>Failure to request a limiting instruction</u>**: Harris claimed that Attorney Hudson was ineffective for failing to request a limiting instruction on the cross-dressing testimony. The circuit court disagreed and concluded that defense counsel's "strategy throughout the trial was to avoid inflaming the jury with a lot of discussion about [Harris's] cross-dressing. Therefore, it is reasonable that she would not want the issue to be brought up again in the form of an instruction."

## 4. <u>Failure to object to mention of charges of severed co-defendants</u>

Harris's cellmate, Elvis Proffitt, testified against Harris at trial. Proffitt had worn a wire to obtain Harris's confession, which was played for the jury. During Proffitt's testimony, he referenced the charges against the severed co-defendants.[7] Attorney Hudson did not object to this testimony at trial. On direct appeal, the Supreme Court had reviewed the admissibility of the testimony under the palpable error standard and concluded that any error was harmless.[8] The circuit

---

[7] As the Commonwealth notes, Harris was charged in the same indictment as the victim's mother and stepfather, but his case was severed from that of his co-defendants.

[8] The Supreme Court explained it was "certain" that the alleged error would not have affected the outcome below. There was ample testimony at Harris's trial that in exchange for narcotics, the co-defendants drugged their son "so Harris could forcibly have his way with him. . . . We are

-7-

court agreed "that the statement did not prejudice Mr. Harris," concluding that the prejudice prong of *Strickland* was not satisfied.

## 5. **Failure to object to alleged prosecutorial misconduct in closing argument**

Next, the circuit court addressed issues which Harris raised regarding the Commonwealth's closing argument:  that a PowerPoint presentation listed a wrong charge on one of the slides; that the word "Guilty" appeared next to the charges; and that the Commonwealth had made the statement, "What this defendant did to him is one of the worst things I've heard in my life."  Harris claimed that Attorney Hudson should have objected to the PowerPoint and the statement.

The court noted that it had instructed the jury at the beginning of trial that opening and closing statements are not and shall not be considered as evidence.  The circuit court explained that the PowerPoint slides were merely visual aids, that they were not admitted into evidence, and that the Commonwealth informed the jury that a wrong charge was listed on the presentation.  The court concluded that "[n]othing in the PowerPoint in any way affected the outcome of the proceeding."  Although, the court found the Commonwealth's statement more concerning, it noted that it was isolated and that the jury had been instructed not to

confident that [Proffitt's] testimony in no way undermined the integrity or fairness of Harris's trial." *Harris*, 2016 WL 7665871, at *4.

consider closing arguments as evidence. The court concluded that Harris had failed to satisfy the prejudice prong of *Strickland* because he failed to demonstrate that the outcome of the trial would have been different if Attorney Hudson had objected.

6. **Failure to prepare for the penalty phase of trial**

Harris also argued that defense counsel was unprepared for the penalty phase of trial and should have done more to find and call witnesses. The circuit court concluded that Attorney Hudson acted adequately in preparing for the penalty phase. Attorney Hudson testified at the evidentiary hearing that Harris's school records could not be located due to their age. There were no Social Security records because Harris was not a recipient. She had considered calling Harris's mother, but she was too ill. Attorney Hudson had already spoken to Harris's brother, and it would have been futile to call him. She wanted to call Harris's ex-wife, but she could not locate her. Attorney Hudson also considered calling a jail worker, but she decided against it because drugs were present in Harris's cell. She did not want the jury to believe that the drugs were Harris's. The circuit court concluded that Attorney Hudson "was simply unable to locate or produce any evidence or testimony that would have assisted [Harris] in the penalty phase. Further, it cannot be ignored that the crimes [Harris] committed were

abhorrent, so it was not at all unreasonable for the jury to recommend the

maximum penalty."

## 7. Cumulative error

The circuit concluded that there was no cumulative error.

## This Appeal

On August 31, 2021, Harris filed a Notice of Appeal to this Court.

We evaluate ineffective assistance of counsel claims
under the standard set forth in *Strickland v. Washington*,
466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),
adopted by this Court in *Gall v. Commonwealth,* 702
S.W.2d 37 (Ky. 1985). Under the *Strickland* framework,
an appellant must first show that counsel's performance
was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct.
2052. A "deficient performance" contains errors "so
serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment." *Id.*
Second, the appellant must show that counsel's deficient
performance prejudiced his defense at trial. *Id.* "This
requires showing that counsel's errors were so serious as
to deprive the defendant of a fair trial, a trial whose result
is reliable." *Id.* An appellant must satisfy both elements
of the *Strickland* test in order to merit relief. *Id.*

When faced with an ineffective assistance of
counsel claim in an RCr 11.42 appeal, a reviewing court
first presumes that counsel's performance was
reasonable. *Commonwealth v. Bussell*, 226 S.W.3d 96,
103 (Ky. 2007) (*quoting Haight v. Commonwealth*, 41
S.W.3d 436, 442 (Ky. 2001) *overruled on other grounds
by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.
2009)). We must analyze counsel's overall performance
and the totality of circumstances therein in order to
determine if the challenged conduct can overcome the
strong presumption that counsel's performance was

-10-

reasonable. *Haight*, 41 S.W.3d at 441-42. In addition, the trial court's factual findings and determinations of witness credibility are granted deference by the reviewing court. *Id.* Finally, we apply the de novo standard when reviewing counsel's performance under *Strickland. Bussell*, 226 S.W.3d at 100.

*Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016).

## Harris's Arguments on Appeal[9]

### I.      Failure to object to prosecutorial misconduct

Harris first argues that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument -- specifically to the PowerPoint presentation with the incorrect charge and the statement that what Harris did to the victim "was one of the worst things I've heard in my life." The circuit court concluded that Harris had failed to satisfy the prejudice prong of *Strickland* because he failed to demonstrate that the outcome of the trial would have been different had Attorney Hudson objected. We agree. As the Commonwealth notes, the evidence against Harris was overwhelming. The victim testified against Harris -- as did Harris's cellmate, and Harris's taped confession was played for the jury.

---

[9] Harris raises eight arguments on appeal. In his Statement of Points and Authorities, Harris numbered the Standard of Review on Appeal as Argument "I" and his first actual argument as "II." We address Harris's arguments in the order presented and have renumbered them accordingly.

**II.    Failure to investigate, prepare for, and present any mitigating evidence during the penalty phase of the trial**

Next, Harris argues that defense counsel was ineffective because she failed to call any witnesses or to present any mitigating evidence on Harris's behalf during the penalty phase of the trial. As amply set forth above, the circuit court detailed Attorney Hudson's efforts to locate records as well as her efforts at searching for and investigating witnesses.

However, Harris submits that his sister, who testified at the evidentiary hearing, would have been able to testify about Harris's life and his dedication to their mother. He claimed that his employer could have testified about his work ethic. Harris omits the fact that his sister also testified that she knew about his cross-dressing and that she suspected his involvement with drugs -- issues which defense counsel strategically wanted to avoid. Moreover, Harris did not know if his employer was aware of his cross-dressing.

The circuit court carefully analyzed these contentions and concluded that counsel acted in an adequate manner. It noted that she was "simply unable to locate or produce any evidence or testimony that would have assisted [Harris] in the penalty phase."

We have reviewed the recorded proceeding of the evidentiary hearing. The trial court's factual findings have a substantial evidentiary foundation. Considering the totality of the circumstances, we agree with the circuit court that

Attorney Hudson's performance was not deficient. We wholly agree as well that it cannot "be ignored that the crimes [Harris] committed were abhorrent, so it was not at all unreasonable for the jury to recommend the maximum penalty."

**III.    Failure to neutralize prejudicial effect of Harris's cross-dressing**

Harris again raises four instances where he contends Attorney Hudson was deficient. With respect to *voir dire* and the failure to request a limiting instruction, we agree with the circuit court that both were matters of sound trial strategy: that defense counsel did not want to inflame the jury by having a lot of discussion about cross-dressing. "Trial strategy will not be second guessed in an RCr 11.42 proceeding." *Hodge v. Commonwealth*, 116 S.W.3d 463, 473 (Ky. 2003), *overruled on other grounds by Leonard*, 279 S.W.3d 151.

Harris contends that he was prejudiced by Attorney Hudson's failure to object to Detective Allen's testimony regarding cross-dressing. However, on direct appeal, our Supreme Court clearly determined that the evidence was admissible. "An RCr 11.42 motion is limited to the issues that were not and could not be raised on direct appeal." *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014). We agree with the circuit court that this argument lacks merit and that defense counsel was not deficient in failing to object.

-13-

Harris's argument in regard to the fourth instance -- the failure to retain a mental health expert -- is completely undeveloped. Therefore, we decline to address it.

### IV. Failure to conduct adequate *voir dire*

Harris argues that Attorney Hudson did not adequately elicit information to determine which -- if any -- members of the panel had biases that would render them incapable of being impartial. The trial court did not specifically address this issue in its August 25, 2021, Order. RCr 11.42(6) provides in relevant part that:

> At the conclusion of the hearing or hearings, the court shall make findings determinative of the material issues of fact and enter a final order accordingly. . . . A final order shall not be reversed or remanded because of the failure of the court to make a finding of fact on an issue essential to the order unless such failure is brought to the attention of the court **by a written request for a finding on that issue** or by a motion pursuant to Civil Rule 52.02.

(Emphasis added.)

Harris did not file a post-judgment request for additional findings. Thus, the issue is not properly before us.

> It is fundamental that a party who asserts a claim must prove that claim to the satisfaction of the trier of fact, and on failure of the fact-finder to rule on the contention, the pleading party must seek a ruling from the trial court by means of a request for additional findings of fact.

*Vinson v. Sorrell*, 136 S.W.3d 465, 471 (Ky. 2004).

## V. Failure to object to mention of the severed co-defendants' charges

Harris contends that counsel was deficient in failing to object to Elvis Proffitt's testimony referencing the severed co-defendants' charges. As noted above, the Supreme Court reviewed Proffitt's testimony on direct appeal under the palpable error standard and concluded that any error was harmless. Harris is correct that "a failure to prevail on a palpable error claim does not obviate a proper ineffective assistance claim." *Leonard*, 279 S.W.3d at 158 (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006)). However, the circuit court did not hold that the decision in Harris's direct appeal constituted a procedural bar on this issue. Rather, the circuit court determined that Harris had failed to satisfy the prejudice prong of *Strickland.* On appeal, Harris contends that "[c]ounsel's failure to object was deficient, and this deficiency prejudiced [Harris]. Absent this deficiency, there is a reasonable probability of a different outcome either at trial or on appeal." The argument is conclusory at best. *Strickland* requires "demonstrable prejudice." *Commonwealth v. Lawson*, 454 S.W.3d 843, 846 (Ky. 2014). In light of the overwhelming evidence against him, we agree with the circuit court that Harris failed to satisfy the prejudice prong of *Strickland* on this issue.

## VI. Failure to investigate and present witnesses to support Harris's defense

Harris contends that there were witnesses who should have been called or at least interviewed for the defense. Among them was the jail employee to whom Harris reported finding drugs in his jail cell. Harris selectively quotes from Attorney Hudson's testimony at the evidentiary hearing and contends that she should have called him. However, on cross-examination, Attorney Hudson clarified that the drug thing "goes both ways." At the time of trial, it was her strategy not to get involved in a drug issue: "that would make the jury think oh if he's a drug user, and he cross-dresses, of course he sodomizes little boys." The trial court found that Attorney Hudson "had considered calling a worker from the jail . . . . However, she decided that this would not be a good course of action as there were drugs present in Harrris' [*sic*] cell and she not want the jury to believe they were his and make assumptions about his character."

Harris also contends that his sister also could have testified during the guilt phase about her observations because she lived on the property and could see Harris's dwelling from her residence. As the Commonwealth notes, the sister's testimony -- as brought out on cross-examination -- would "likely have been more harmful that helpful" and would have bolstered the victim's testimony. The sister admitted seeing the victim's "parents" visiting with Harris -- during which time

the victim's younger siblings were locked outside unsupervised. However, she did not see the victim and had no knowledge of what had gone on behind closed doors.

At the evidentiary hearing, Attorney Hudson testified that Harris's brother did not want to testify and that he did not have any relevant information. Furthermore, she noted that the brother had recently been released from federal prison and had state charges. His drug use would have been an issue as well. The circuit court found that Attorney Hudson had interviewed Harris's brother, who offered no helpful information and who made it clear that he wanted no part of the trial.

Harris also contends that two of his cellmates wrote letters on Harris's behalf. Harris submits that "[a]t trial, they would have testified that [Harris] and Elvis [Proffitt] were in the medical cell together, and that when [Harris] returned to his cell from medical, he was shaken up and terrified of Elvis." Appellant's brief contains no citation to the record to support this contention. Neither cellmate testified at the evidentiary hearing.

Harris also raises an issue regarding the failure to call the victim's younger siblings as witnesses. Attorney Hudson testified that she met with the younger siblings, that they had never been in the room where "this" occurred, and that "it" had never happened to them. They had no relevant information or

personal knowledge. The circuit court found that Attorney Hudson had investigated the victim's siblings and determined that they were of no assistance.

Harris wraps up this argument by stating, "But for counsel's failure to investigate, interview, and subpoena relevant witnesses, there would have been a different outcome in [Harris's] case."

The trial court's findings have a substantial evidentiary foundation, and we defer to them. Considering the totality of the circumstances, we agree with the trial court that Attorney Hudson performed her essential functions and acted reasonably. We further conclude that Harris has failed to satisfy the prejudice prong of *Strickland* on this issue.

## VII. Failure to establish and maintain a positive attorney client relationship

The circuit court did not address this issue. Thus, it is not properly before us for the same reasons discussed above. RCr 11.42(6). *Vinson*, *supra.*

## VIII. Cumulative error

We are not persuaded of any cumulative error. As our Supreme Court stated in *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010), "we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice."

We affirm the thorough and well reasoned Order of the Laurel Circuit Court.

ALL CONCUR.


BRIEF FOR APPELLANT:

Jacquelyn "Jaye" Bryant-Hayes
Lagrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky