Cathy DIAZ and Lazaro Romero, Appellants,

v.

Rosa MORALES and Santiago Romero, Appellees.

No. 1999–CA–003139–MR.

Court of Appeals of Kentucky.

July 13, 2001.

Thomas P. Goodness, Lexington, KY,
Brief and Oral Argument for Appellants.

Rodney G. Davis, Richmond, KY, Brief and Oral Argument for Appellees.

Before GUDGEL, Chief Judge; EMBERTON and McANULTY, Judges.

EMBERTON, Judge:

Cathy Diaz and Lazaro Romero appeal from an order of the trial court denying them status as *de facto* custodians of Barbara Romero and awarding custody of Barbara to her natural parents, Rosa Morales and Santiago Romero. For the reasons discussed, we affirm.

In October 1992, while incarcerated in Florida, Rosa gave birth to Barbara Romero. At Rosa's request, the Florida court awarded temporary custody to Cathy when Barbara was four months old. She was then brought to live at Cathy's residence in Richmond, Kentucky. Lazaro is Santiago's brother and Cathy's live-in boyfriend.

In 1993, upon Rosa being released from prison, she and Santiago moved into a trailer in Richmond. Social Services then discussed with Rosa and Santiago the return of Barbara's custody to them and the steps it would require before approval of the transfer. Rosa was instructed to participate in parenting classes, undergo a psychiatric examination, and participate in a drug program. Although she completed the parenting classes, Rosa did not fulfill the remaining requirements.

Rosa visited Barbara approximately two times per month. On January 29, 1998, Cathy sought child support from Rosa, and on March 20, 1998, almost six years after her release from prison, Rosa and Santiago sought custody of Barbara.

At the hearing it was established that Rosa and Santiago are married and both have obtained stable employment. They have moved from the trailer and now live in an apartment. Rosa explained that she did not seek custody at an earlier time because she believed the trailer to be unsuitable for a young child. She could not explain, however, why, after her move to an apartment two years prior to her motion for custody, she did not then seek custody. She contended that while Barbara was not in her custody she maintained a close relationship with her and provided support as her financial means would allow.

It is clear from the testimony that throughout Barbara's life Cathy's mother, Hazel Griggs, has played a significant role in Barbara's life. While Cathy worked, Hazel cared for Barbara in her home and, because of Cathy's late hours, Barbara spent much of her time with Hazel. Barbara has a bedroom at Hazel's home, attends school in the district where Hazel lives, boards the bus at Hazel's residence, and perhaps most telling of the relationship, Barbara refers to Hazel as "Mama." It is also apparent that Hazel has some health problems which have recently prevented her from caring extensively for Barbara. Since obtaining temporary custody of Barbara, Cathy, her live-in boyfriend Lazaro, and Cathy's family have provided financial support for Barbara.

After a hearing the domestic relations commissioner found that Cathy was Barbara's *de facto* custodian under Kentucky Revised Statutes (KRS) 403.270 and recommended the award of custody to Cathy and Lazaro with visitation to Rosa and Santiago. The trial court rejected the commissioner's recommendation, finding that the best interests of the child standard did not apply, and awarded custody to Rosa and Santiago.[1] The trial court's findings in part are:

---

1. There is no allegation or proof that Rosa and Santiago are unfit parents so, absent ap-

2. The petitioners, as natural parents, have not by clear and convincing proof waived their superior right to custody.

3. Although the petitioners may have been in agreement as to the choice of temporary custodian during a period of incarceration, the appointment of a temporary custodian was not voluntary. Absent clear and convincing proof of a knowing and voluntary surrender of parental rights, the 'best interests' test for considering custody with a non-parent is not the correct standard.

4. The respondents are not 'de facto' custodians within the meaning of KRS 403.270. The temporary involuntary custody awarded to the respondent by the Florida Court in light of the parent's incarceration does not qualify as voluntary acquiescence for the time to run under KRS 403.270.

5. Any time that the respondent's relatives may have kept the child will not qualify towards a finding of 'de facto' custodian as it flows through the temporary custody award to the respondent by the Florida Court.

 We will not disturb the trial court's finding that Rosa and Santiago did not waive their superior right to custody. Historically, a parent's superior right to custody, as opposed to a non-parent, is paramount and generally requires that a third party prove that the parent is unfit by clear and convincing evidence. The best interests of the child is considered only after the trial court finds that the parent "knowingly and voluntarily" surrendered the right to custody by clear and convincing evidence. And, a short term visit or delivery of possession is not proof of waiver.[2] A waiver of the parent's superior right to custody requires statements and circumstances equivalent to an express waiver.[3] Although it could be reasonably argued that the failure of Rosa and Santiago to seek custody of Barbara or establish a parental relationship is indicative of the intent to waive their custody rights, the trial court did not abuse its discretion. Waiver requires that there must be some statement or action that unequivocally waives the right to superior custody. There was evidence that after release from her incarceration, Rosa did not seek custody because of her financial condition and her belief at that time it was in Barbara's best interests to remain in Cathy's custody.

KRS 403.270(1) provides:

(a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

plication of the best interests test, they are entitled to custody. *Aton v. Aton,* Ky.App., 911 S.W.2d 612 (1995).

**2.** *Greathouse v. Shreve,* Ky., 891 S.W.2d 387 (1995).

**3.** *Shifflet v. Shifflet,* Ky., 891 S.W.2d 392 (1995).

(b) A person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection. Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section and KRS 403.280, 403.340, 403.350, 403.420 and 405.020.

■ In a society where it is argued by some that family values and the traditional family have deteriorated and where the courts have seen an increasing number of cases where, for various reasons, a child has been raised and supported by those other than their natural parents, the legislature saw a need to recognize, that under certain circumstances, a third party has assumed the role of parent and should be recognized as such. Although there is yet little case law interpreting KRS 403.270, the standard of proof required to establish a *de facto* custodial relationship is high-to wit-it must be demonstrated by clear and convincing evidence that the third party is the primary care giver and financial supporter for the stated time period.[4]

■ We disagree with the trial court that there must be a voluntary relinquishment of custody to a third party. To the contrary, KRS 403.270 specifically applies to cases where the child is placed by the Department for Social Services. Whether the child has been cared for by a third party because of the parent's intentional acts or an uncontrollable force such as illness, it remains that, after a child has been cared for and financially supported by a third party for the specified time period, the child's interests become the court's focus.

■ The question remains whether Cathy was Barbara's primary care giver and financial supporter for a period of one year. There is no viable issue regarding the sufficiency of the time Barbara was in a third party's care. Cathy assumed temporary custody when Barbara was four months old and Rosa did not attempt to regain custody until Barbara was six years old. However, because the record is clear that Cathy was not Barbara's sole care giver or financial provider, the issue presented is whether she sufficiently demonstrated that she is entitled to status as a *de facto* custodian.

There is no dispute that Cathy did not care for Barbara alone. Hazel, who is not a party to this action and does not seek custody of Barbara, did by all accounts provide for her care the majority of the time, and it was she who provided financial support. While Cathy had temporary legal custody of Barbara, Hazel, to whom Barbara refers as "Mama," established familial bonds with the child. Cathy cannot vicariously or otherwise assume the position of Hazel and be recognized as Barbara's *de facto* custodian.

While we disagree with the trial court's reasoning, we find that the evidence is not clear and convincing that Cathy established that she is Barbara's *de facto* custodian and affirm the award of custody to her natural parents.

All concur.

---

4. A parent's superior right to custody is founded, in part, on constitutional principles. *See Greathouse, supra.* In this case there is no challenge to the constitutionality of KRS 403.270.