Lori BAKER, Appellant,

v.

Sam COMBS and Linda Combs, Appellees.

No. 2007–CA–001013–ME.

Court of Appeals of Kentucky.

Feb. 29, 2008.

David O. Smith, Marcia A. Smith, Corbin, KY, for appellant.

Shane A. Romines, Corbin, KY, for appellee.

Before KELLER, THOMPSON, and WINE, Judges.

## OPINION

KELLER, Judge.

Lori Baker has appealed from the order of the Knox Family Court denying her motion for custody of her natural child, Trenton Baker, and awarding continued permanent custody to Linda and Sam Combs, Trenton's paternal grandmother and step-grandfather. Having reviewed the record, we must vacate the family court's order and remand this matter for a hearing to determine whether the Combses were Trenton's *de facto* custodians.

Lori is the natural mother of Trenton, born October 31, 1999. Trenton's natural father is Joshua Hatfield. Lori and Hatfield were never married, and he has never participated in this action or otherwise sought custody of Trenton. Barbara and Johnny Byrley are Lori's mother and step-father. Lori is now married to Barry Welborn, and they have a child, Trevor, who was born in 2005.

In order to fully explain the present case, we must look to prior actions in Whitley and Laurel District Courts re-garding Trenton's custody. On January 20, 2004, Sam sought and received an Emergency Custody Order in Whitley District Court[1] removing Trenton from Lori on the basis of Lori's drug use and the fact that she left Trenton with Sam and Linda for the preceding two months. Following a temporary removal hearing a few days later, the Whitley District Court placed Trenton in the temporary custody of the Cabinet for Families and Children and gave the Cabinet the discretion to place Trenton in a safe, secure, and stable environment. In the order, the Whitley District Court noted that paternity had not been established and ordered genetic testing. In its findings of fact, the Whitley District Court noted that Lori had been incarcerated in the Whitley County Jail on a misdemeanor charge, but had been released on January 21, 2004. Following an adjudication hearing in February, the Whitley District Court ordered that Trenton remain in the temporary custody of the Cabinet, that Hatfield complete DNA testing, and that both Lori and Hatfield submit to random drug tests.

Rather than holding a disposition hearing as scheduled on April 21, 2004, the Whitley District Court transferred the case to the Laurel District Court.[2] In doing so, the Whitley District Court noted that Lori lived in Laurel County, the paternity action had been filed in Laurel County, and that Hatfield lived in Laurel County. On February 3, 2005, the Laurel District Court held a brief permanency hearing[3] and entered an order stating that the permanency plan was placement with a permanent custodian pursuant to the Cabinet's recommendation. The Laurel District Court then named the Combses as

---

1. 04–J–00007–001.

2. 04–J–00208–001.

3. By separate order, this Court denied the Combses' motion to strike the audio recording of the February 3, 2005, Laurel District Court proceedings.

the permanent custodians. The Laurel District Court entered a permanent custody order the same day, presumably naming the Combses as Trenton's permanent custodians, although the order portion of the preprinted AOC–DNA–9 form was not completed. In the Findings of Fact portion of the form, the Laurel District Court indicated that it had considered several factors, including two factors under KRS 403.270. It also indicated that it considered factors relating to a prior independent finding that a *de facto* custodian existed. However, the record does not contain any document reflecting a prior independent finding that a *de facto* custodian situation existed in this case. We are not aware of any further action involving the Laurel District Court action.

Eight months later, on October 10, 2005, the Byrleys and Lori filed a Verified Petition for Custody in the Knox Family Court, as this was the home county of the Combses and Trenton. The Byrleys requested custody or in the alternative that Lori be granted custody. By order entered January 10, 2006, the family court permitted Lori supervised visitation with Trenton and ordered that she submit to random drug tests. The record contains numerous drug test results showing a negative result each time.

In early 2007, Lori moved the family court for custody of Trenton, stating that she had complied with the court's order that she rehabilitate herself, that she was married, and that she was leading a stable life. The Combses objected to the motion, indicating that it would not be in Trenton's best interest to change custody. The family court held a hearing on Lori's motion on February 28, 2007. Lori's witnesses testified that she had overcome her past problems with drug abuse, that she was currently a different person, and that she was capable of raising Trenton. The Combses testified about Lori's drug use and her past actions in leaving Trenton with them for extended periods of time. They also testified that Lori and Hatfield were ordered to pay child support through the Cabinet in an amount of $300 per month. They indicated that Lori paid her portion, while Hatfield was behind on his portion. The family court denied Lori's motion on the record, noting that Trenton had been in the Combses' home for more than three years and that the benefits of changing custody would not outweigh the harm in doing so. The family court entered an order to this effect on April 4, 2007, finding that it would not be in Trenton's best interest to remove him from the Combses' home. It also awarded Lori standard, unsupervised visitation.

Lori moved the family court to alter, amend or vacate its order, arguing that the Combses were not *de facto* custodians, so that the best interest standard did not apply. At the hearing on the motion, the Combses argued that they were *de facto* custodians by virtue of the Laurel District Court's Permanent Custody Order, which had not been appealed and was the law of the case. Therefore, the best interest standard was appropriate. The family court denied the motion on May 7, 2007, and this appeal followed.

On appeal, Lori argues that the family court erred in awarding custody to the Combses, because they were not *de facto* custodians and she was not unfit. On the other hand, the Combses assert that the Laurel District Court decided the issue of *de facto* custodians, so that any further adjudication on this issue is barred by *res judicata*. Furthermore, they argue that they are *de facto* custodians.

In *Diaz v. Morales*, 51 S.W.3d 451, 454 (Ky.App.2001), this Court addressed child custody proceedings:

> Historically, a parent's superior right to custody, as opposed to a non-parent, is paramount and generally requires that a

third party prove that the parent is unfit by clear and convincing evidence. The best interests of the child is considered only after the trial court finds that the parent "knowingly and voluntarily" surrendered the right to custody by clear and convincing evidence.

The *Diaz* Court went on to state:

> In a society where it is argued by some that family values and the traditional family have deteriorated and where the courts have seen an increasing number of cases where, for various reasons, a child has been raised and supported by those other than their natural parents, the legislature saw a need to recognize, that under certain circumstances, a third party has assumed the role of parent and should be recognized as such.

*Id.* at 455. This third party is known as a *de facto* custodian. A *de facto* custodian is defined in KRS 403.270(1)(a) as:

> [A] person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

Once it determines that such a person is a *de facto* custodian, "the court shall give the person the same standing in custody matters that is given to each parent under this section[,]" KRS 403.270(1)(b), and "determine custody in accordance with the best interests of the child[.]" KRS 403.270(2).

In the present case, the issue before this Court is whether there has been a prior finding that the Combses were Trenton's *de facto* custodians. We do not believe that there was any such finding. While the Combses were indeed awarded custody of Trenton, there is no finding in the record that they had reached the elevated level of *de facto* custodians. The record does not reflect that any court has made findings that the Combses were the primary caregivers and financial supporters of Trenton for the required statutory period. We have reviewed the Laurel District Court's Permanent Custody Order, and we cannot hold that checking boxes on a pre-printed AOC–DNA–9 form provides the necessary support for such an assumption. In fact, the form itself notes that "KRS 403.270 requires a prior independent finding that a *de facto* custodian exists." However, there is nothing in the record to reflect that this prior independent finding was ever made.

Therefore, before the family court may determine custody as between Lori and the Combses using a best interests standard, it must first independently decide that the Combses are *de facto* custodians. As such a finding has never been made, we must vacate the family court's order and remand this matter for a determination of whether the Combses meet the requirements to be *de facto* custodians and for any other proceedings that flow from that decision.

For the foregoing reasons, the order of the Knox Family Court is vacated and this matter is remanded for further proceedings in accordance with this opinion.

ALL CONCUR.