RENDERED: SEPTEMBER 26, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000154-DGE

FINAL

DATE 10/22/19 JMF

DONNA KRIEGER AND TERRY GARVIN                                        APPELLANTS

ON REVIEW FROM COURT OF APPEALS
V.         CASE NOS. 2015-CA-001819-ME AND 2015-CA-001820-ME
JEFFERSON CIRCUIT COURT NO. 14-CI-503666

TAMARA D. GARVIN, ASHLEY GARVIN                             APPELLEES
AND KURT KNIFKE

## OPINION OF THE COURT BY JUSTICE WRIGHT

## REVERSING AND REMANDING

This case involves a minor child, K.R.K., and whether her maternal grandfather and his girlfriend, in whose custody K.R.K. has been since she was eight months old, may be considered her de facto custodians pursuant to KRS 403.270.

## I. BACKGROUND

On May 8, 2014, in a temporary removal hearing, the Jefferson Family Court awarded temporary custody of eight-month-old K.R.K. to her maternal grandfather, Terry Garvin and his long-term girlfriend, Donna Krieger, with whom he cohabitated. On June 19, 2014, K.R.K.'s mother, Ashley Garvin, stipulated that K.R.K. was at risk of abuse or neglect and the family court ordered temporary custody was to remain with Terry and Donna. On November 26, 2014, K.R.K.'s maternal grandmother, Tamara Garvin, filed an

action seeking custody or, in the alternative, grandparent visitation. On December 17, 2014, Terry and Donna responded to Tamara's petition and filed a cross-petition asking the family court to find them to be K.R.K.'s de facto custodians.[1]

The family court conducted a hearing on the pending issues related to K.R.K.'s custody and Tamara's petition for grandparent visitation on June 23, 2015. The family court issued its Findings of Fact, Conclusions of Law, and Order on September 10, 2015, finding that Terry and Donna were K.R.K.'s primary caregivers and financial supporters, naming them as K.R.K.'s de facto custodians, and awarding them sole permanent custody. The family court also awarded Tamara grandparent visitation with K.R.K. pursuant to KRS 405.021. Tamara and Ashley appealed to the Court of Appeals, which reversed, holding that the family court erred in naming more than one individual as K.R.K.'s de facto custodian. It did not address any of the parties' remaining issues, declaring them moot, and remanded to the family court.

Terry and Donna sought discretionary review from this Court, which we granted. This appeal followed. We now reverse the Court of Appeals for the following reasons.

## II. ANALYSIS

KRS 403.270 provides, in pertinent part:

---

[1] At various times during the pendency of this custody battle, Ashley has also filed motions to regain custody of K.R.K. The issues concerning these motions—including whether they tolled the requisite de facto custodian time—are not presently before this Court.

2

(1)(a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

(b) A person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection. Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section and KRS 403.280, 403.340, 403.350, 403.822, and 405.020.

Here, the family court found Terry and Donna to be K.R.K.'s de facto custodians with "the same standing in custody matters" as her parents. The parties raised other issues before the Court of Appeals, which are not before this Court as the appellate court found that they were moot; rather, we must determine only whether the family court erred in naming more than one person as K.R.K.'s de facto custodian.

This Court has never addressed the issue of whether more than one individual may be named as a de facto custodian pursuant to KRS 403.270. However, the Court of Appeals has held that "a married couple is considered a single unit for the purposes of de facto custodianship." *J.G. v. J.C.*, 285 S.W.3d 766, 768 (Ky. App. 2009). In *Chafer v. Vaughn*, 2006-CA-000887-ME, 2007 WL 1207135, at *3 (Ky. App. Apr. 6, 2007), the Court of Appeals addressed the

potential conflict between the statutory language referring to "the" primary caregiver and a trial court's award of de facto custodian status to a couple. It stated:

> We find *Allen* [*v. Devine*, 178 S.W.3d 517 (Ky. App. 2005)] and *Diaz* [*v. Morales*, 51 S.W.3d 451 (Ky. App. 2001)] to be distinguishable from the facts at bar. In each of these cases, the parties who sought parental and/or visitation rights were a married or co-habitating couple regarded by the trial court as a single entity for purposes of the KRS 403.270 analysis. In *Allen*, for example, a panel of this Court accepted the trial court's finding that the Allens—a married couple for 30 years—*collectively* were de facto custodians of the minor child at issue. *Allen* did not hold that separate, adversarial parties each were primary caregivers or de facto custodians. Such a holding would have run afoul of the statutory language allowing the trial court to find "the" primary caregiver. Thus, our use of "de facto custodians" in the plural in the *Allen* opinion did not represent a departure from KRS 403.270 nor *Consalvi* [*v. Cawood*, 63 S.W.3d 195 (Ky. App. 2001)].

*Id.*

While we acknowledge—as has the Court of Appeals—that the statutory language of KRS 403.270 refers to "the primary caregiver" and "the person," we also look to the statute's other language in interpreting its meaning. Namely, the statute includes the phrase, "unless the context requires otherwise" before defining de facto custodian. As we have held, "[s]tatutes, of course, 'must be read as a whole and in context with other parts of the law.'" *Hall v. Hosp. Resources, Inc.*, 276 S.W.3d 775, 784 (Ky. 2008) (quoting *Lewis v. Jackson Energy Co–Op Corp.*, 189 S.W.3d 87, 92 (Ky. 2005)). This Court "must consider the *entire* phrase and account for *all* of the words used in it. The courts are not at liberty to ignore the legislature's use of [a] phrase." *Pearce v. University of*

4

*Louisville, by and through its Board of Trustees*, 448 S.W.3d 746, 751 (Ky. 2014).

In using the phrase, "unless the context requires otherwise," the legislature left room for trial courts to act in the best interests of the child in determining which individual (or individuals in this case) qualify as the child's de facto custodian(s). Here, where K.R.K. has been living with Terry and Donna since she was eight months old, the context did require otherwise. The Court of Appeals held that solely because Terry and Donna were unmarried, they could not qualify as a single unit for purposes of KRS 403.270. We disagree. The family court judge was in the best position to determine whether the context of this case was such that both Terry and Donna were the appropriate de facto custodians. It determined they were. Trial courts are vested with a great deal of discretion in custody proceedings in order to ensure that the best interests of the child are protected. The statutory language expressly allowed the court to deviate from the legislative definition of "de facto custodian" if "the context requires otherwise." We will not disturb that decision.

Our interpretation and holding today is in line with KRS 446.020(1). Contained in the Chapter of the Kentucky Revised Statutes regarding statutory construction, it provides, in pertinent part: "[a] word importing the singular number only may extend and be applied to several persons or things, as well as to one (1) person or thing . . . ." That statute was enacted in 1942 and has

5

never been amended. "When amending or enacting legislation, we presume the Legislature knows and understands the then-existing laws . . . ." *Castle v. Commonwealth*, 411 S.W.3d 754, 758 (Ky. 2013). Since the Legislature knew of KRS 446.020(1) at the time it enacted KRS 403.270 and used no language indicating it meant its singular language not to extend to more than one person, we hold that the language utilized does not limit a minor's de facto custodian to one person.

## III. CONCLUSION

Terry and Donna are not precluded from being K.R.K.'s de facto custodians simply because they are an unmarried couple. The parties raised other issues to the Court of Appeals, which that court held were moot due to its adverse ruling on this issue. We reverse the Court of Appeals' holding that individuals who are members of an unmarried couple cannot both be deemed as a child's de facto custodians and remand to that Court to rule on the remaining issues.

Minton, C.J.; Buckingham, Hughes, Keller, VanMeter and Wright, JJ., sitting. Minton, C.J.; Keller, VanMeter and Wright, JJ., concur. Hughes, J., concurs in result only without separate opinion. Buckingham, J., dissents with separate opinion. Lambert, J., not sitting.

**BUCKINGHAM, J., DISSENTING.** I respectfully dissent. KRS 403.270(1)(a) states that "de facto custodian" means "a person" who has been the primary caregiver for, and financial supporter of, a child for the requisite period. A married couple is considered a single unit for purposes of de facto

6

custodian status. *J.G. v. J.C.*, 285 S.W.3d 766, 768 (Ky. App. 2009). There is no authority or precedent, however, for recognizing an unmarried couple as a single unit for purposes of the statute. And, as argued by Appellee Garvin in her brief, under the Appellants' interpretation of the statute, even roommates who have no relationship to each other could be considered a "single unit" for de facto custodianship as long as they collectively provide for the care and financial support of a child.

I further agree with Appellee Garvin's statement in her brief that "[t]his interpretation serves to expand a narrowly drawn statute into a broad sweeping statute placing all cohabiters in a home with a child on equal footing with natural parents." I cannot accept that our legislature intended the words "a person" to include an unmarried couple. While there may be merit in some cases to allow de facto custodian status to an unmarried couple, such is not allowed in the absence of clear statutory language allowing same. I would affirm the Court of Appeals.

COUNSEL FOR APPELLANTS:

Jacqueline M. Caldwell
Louisville, KY

COUNSEL FOR APPELLEE TAMARA D. GARVIN:

Ray H. Stoess Jr.
Louisville, KY

COUNSEL FOR APPELLEE ASHLEY GARVIN:

Ashley Garvin, *pro se*
Louisville, KY

COUNSEL FOR APPELLEE KURT KNIFKE:

Kurt Knifke, *pro se*
Louisville, KY