RENDERED: SEPTEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1371-MR

GUILLERMO GONZALES                                             APPELLANT


APPEAL FROM MONTGOMERY CIRCUIT COURT
v.          HONORABLE WILLIAM E. LANE, JUDGE
ACTION NO. 19-CI-00062


MARIA REBECCA MURILLO;
PETRA AZUCENA LOZANO-
RODRIGUEZ; JAVIER AGUIRRE;
KENTUCKY CABINET FOR
HEALTH AND FAMILY SERVICES;
E.G.-L., A MINOR; N.L., A MINOR;
AND S.L., A MINOR                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, LAMBERT, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Guillermo Gonzales brings this appeal from findings of fact,

conclusions of law, and judgment entered in the Montgomery Circuit Court on

October 27, 2021, determining that Guillermo had waived his superior right to

custody as to his biological children, E.G.-L. and S.L., awarding Maria Rebecca

Murillo and Guillermo joint custody of E.G.-L. and S.L., designating Maria as the primary residential custodian, and awarding Guillermo timesharing. We affirm.

Petra Azucena Lozano-Rodriguez is the biological mother of three children – N.L., who was born on November 30, 2011; E.G.-L., who was born on May 9, 2015; and S.L., who was born on January 13, 2017. N.L.'s putative father is Javier Aguirre.[1] Guillermo is the biological father of E.G.-L. and S.L. Maria is Petra's sister; thus, Maria is the maternal aunt of N.L., E.G.-L., and S.L.

Maria's direct involvement with Petra's children began in 2015 when Guillermo, Petra, N.L., and E.G.-L. came to live with Maria and her family in Montgomery County, Kentucky. It is undisputed that Petra was struggling with serious substance abuse, and shortly after their arrival at Maria's home, Petra went into a drug rehabilitation treatment facility. Although Guillermo worked, Maria became the primary caregiver and financial provider for N.L. and E.G.-L. Several months later, Guillermo, Petra, N.L., and E.G.-L. left Maria's home and moved to Virginia.

In late 2016, Petra and Guillermo's relationship ended, and Petra returned to Kentucky to live with Maria. Petra, who was pregnant with S.L., brought N.L. with her to Maria's home, but E.G.-L. remained in Virginia with

---

[1] Javier Aguirre is the putative father of N.L. In the action below, service upon Javier was accomplished by warning order attorney; however, Javier did not appear before the circuit court. And, Javier did not pursue an appeal of the custody determination as it relates to N.L.

Guillermo.  Shortly after Petra arrived at Maria's home and upon Maria's urging, Petra went back to Virginia to retrieve E.G.-L.; Guillermo acquiesced.  After returning to Maria's home with E.G.-L., Petra traveled to Tennessee leaving N.L. and E.G.-L. in Maria's care.  On January 13, 2017, Petra gave birth to her third child, S.L.  Shortly after S.L. was born, Petra again returned to Maria's home with S.L.  Even though Petra was in and out of Maria's home from November 2016 until February 2017, it is undisputed that Maria was the primary caregiver and financial provider for Petra's children.  And, Guillermo knew the children were living in Maria's home in Kentucky, but he continued to live out of state and did not visit the children.

In February of 2017, while in Kentucky, Petra was again struggling with substance abuse and decided to relinquish custody of her three children to the Cabinet.  The Cabinet contacted Guillermo and told him that if he wanted the children, he needed to come to Kentucky and retrieve them.  Guillermo, who was living in Virginia and working in New York, was unable to arrange immediate transportation to Kentucky.  So, the Cabinet filed dependency, abuse, and neglect petitions (17-J-00032, 17-J-000333, and 17-J-00034) in the Montgomery Circuit Court on February 14, 2017, as to N.L., E.G.-L., and S.L.  The Cabinet subsequently placed N.L., E.G.-L., and S.L. with Maria.  The three children remained with Maria from April 2017 until August 2018.

In August of 2018, Maria was dealing with some family issues and asked the Cabinet to place Petra's three children in foster care. Shortly after the Cabinet's placement, Maria regretted the decision and filed motions to intervene in the dependency, neglect, and abuse (DNA) actions that the Cabinet had filed against Petra. Since the filing of the motion to intervene, the record reflects that Maria has diligently pursued having the children returned to her.

On April 23, 2019, Maria initiated the underlying custody action by filing a petition for custody of N.L., E.G.-L., and S.L. in Montgomery Circuit Court. During the pendency of the underlying custody action, all three children were again placed with Maria in August of 2020. Guillermo, who was living out of state, was denied placement of the children on two occasions pursuant to the Interstate Compact for the Placement of Children (ICPC). N.L., E.G.-L., and S.L. have remained solely in Maria's custody since August of 2020.

An evidentiary hearing was conducted on October 7, 2021, on Maria's motion to establish custody and timesharing. Petra, who was incarcerated on drug related charges in Tennessee, appeared and was represented by counsel. Guillermo also appeared with counsel. By findings of fact, conclusions of law, and judgment entered October 27, 2021, the circuit court found that Maria was a *de facto* custodian of N.L., E.G.-L., and S.L. N.L.'s putative father, Javier, failed to appear and Maria was awarded sole custody of N.L. No appeal has been taken by Javier

regarding custody of N.L. The circuit court also determined that as to E.G.-L. and S.L., Guillermo had waived his superior right to custody and was unfit.[2] As such, the circuit court employed a best interests analysis to determine custody as between Maria and Guillermo. The circuit court ultimately awarded joint custody of E.G.-L. and S.L. to Maria and Guillermo; Maria was designated the primary residential custodian, and Guillermo was awarded visitation. Guillermo pursued this appeal as to the custody determination involving his two biological children, E.G.-L. and S.L.

It is a deeply entrenched concept of American jurisprudence that a biological parent has a "superior right to custody" and that such right is paramount to that of a third party. *Diaz v. Morales*, 51 S.W.3d 451, 454 (Ky. App. 2001). To determine custody between a parent and a nonparent, the best interests analysis of Kentucky Revised Statutes (KRS) 403.270(2) is not utilized unless the third party can demonstrate by clear and convincing evidence that she qualified as a *de facto* custodian or that the biological parent waived his superior right to custody or was unfit. *Id.*

Guillermo initially contends that the circuit court erred by determining that Maria was the *de facto* custodian of E.G.-L. and S.L. as Maria could not

---

[2] Petra Azucena Lozano-Rodriguez acknowledged she had waived her superior right to custody of her children, N.L., E.G.-L., and S.L., to her sister, Maria Rebecca Murillo.

satisfy the time requirement of KRS 403.270(1).  More particularly, Guillermo

maintains that his actions seeking to regain custody of the children tolled the time

under KRS 403.270(1) required to establish *de facto* custodian status.

KRS 403.270(1) provides, in relevant part:

> (a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "*de facto* custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who within the last two (2) years has resided with the person for an aggregate period of six (6) months or more if the child is under three (3) years of age and for an aggregate period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services.  Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

KRS 403.270(1)(a).  Relevant to this appeal, to qualify as a *de facto* custodian, it

must be demonstrated that during the previous two-year period, a child three years

of age or older must have resided with the person for an aggregate period of one

year or more.  And, it is well-settled that "any direct participation in a child

custody proceeding that demonstrates a parent's desire to regain custody of their

child is sufficient to toll the *de facto* time requirement under KRS 403.270."

*Meinders v. Middleton*, 572 S.W.3d 52, 59 (Ky. 2019).

In the case *sub judice*, E.G.-L. came to live with Maria in November of 2016 and S.L. came shortly after his birth on January 13, 2017. Then, on February 13, 2017, Petra took her children from Maria's home and relinquished custody of them to the Cabinet. The Cabinet contacted Guillermo, who was living in Virginia. Guillermo could not immediately travel to Kentucky, so the Cabinet filed DNA petitions on February 14, 2017. Guillermo was present for the DNA hearing on February 15, 2017, and expressed his desire to take the children with him to Virginia. As Guillermo was living out of state, the court did not permit him to take the children with him pending a home study in accordance with the ICPC. However, Guillermo also appeared before the court on other occasions in an effort to gain custody of the children. Guillermo's appearance and direct participation in the DNA action demonstrated his desire to gain custody of the children and was sufficient to toll the time required under KRS 403.270(1) to qualify as a *de facto* custodian. *See Meinders*, 572 S.W.3d at 59. Therefore, we agree with Guillermo that Maria did not satisfy the time requirement of KRS 403.270(1)(a). Thus, we conclude that the circuit court erred by determining that Maria qualified as a *de facto* custodian of E.G.-L. and S.L.

However, the *de facto* custodian ruling alone does not resolve the custody issue in this case. The circuit court also ruled that Guillermo had waived his superior right to custody and he now contends on appeal that the circuit court

erred by determining that he had waived his superior right to custody as to E.G.-L. and S.L.

It is well-established that where a nonparent pursuing custody does not qualify as a *de facto* custodian, he or she must prove by clear and convincing evidence that the parent has either waived his superior right to custody or is unfit. *Mullins v. Picklesimer*, 317 S.W.3d 569, 578 (Ky. 2010). Waiver is demonstrated by a showing that a "voluntary and intentional surrender or relinquishment of a known right" has occurred or there has been an "election to forego an advantage which the party at his option might have demanded or insisted upon." *Id.* at 578 (quoting *Greathouse v. Shreve,* 891 S.W.2d 387, 390 (Ky. 1995)). Proof of waiver must be demonstrated by clear and convincing evidence and if so demonstrated, the "court shall determine custody between the parent and nonparent based on the best interest of the child." *Moore v. Asente*, 110 S.W.3d 336, 360 (Ky. 2003).

The following factors have been identified for consideration when determining whether a parent has waived his superior right to custody:

> length of time the child has been away from the parent, circumstances of separation, age of the child when care was assumed by the non-parent, time elapsed before the parent sought to claim the child, and frequency and nature of contact, if any, between the parent and the child during the non-parent's custody.

*Picklesimer*, 317 S.W.3d at 579 (citation omitted). However, these enumerated factors are not an exhaustive list and waiver should be viewed on a case-by-case

basis. *Id.* It should also be noted that a doctrine of "partial waiver" has been recognized. *J.S.B. v. S.R.V.*, 630 S.W.3d 693, 703 (Ky. 2021). The doctrine of partial waiver is particularly grounded upon what is best for the child to avoid the harm that inevitably results from destroying the bond that develops between a child and a nonparent that has raised the child as her own. *Id.* at 703.

In the case *sub judice*, the record reflects that Guillermo made no attempt to assert his superior right to custody when E.G.-L. and the S.L. were living with Maria from November of 2016 to February of 2017. Guillermo knew the children were with Maria, yet he made no attempt to exercise custodial control over the children. Rather, Guillermo acquiesced in allowing Maria to provide the primary care for his very young children, to make the parental decisions for the children, and to financially support the children. In fact, Guillermo sent only $100 to Maria for the purchase of Christmas presents for the children. And, during the period between November 2016 until August 2018, and from August 2020 until October 2021, Guillermo acknowledged he only sent a total of $1,000 to Maria for the care of the children. So, during this approximate thirty-six-month period when Maria was financially providing for Guillermo's children, he provided an average of $28 per month for the care of his children.

Also, during this same period of time, Guillermo continued to live out of state, chose not to move back to Kentucky, and usually only saw the children

when he came to Kentucky for court appearances. Meanwhile, the children bonded with Maria and even referred to her as their mother. The children, likewise, viewed Maria's children as their siblings. These facts taken together demonstrate by clear and convincing evidence that Guillermo waived his superior right to custody. And, as a result of the waiver, Maria was on equal footing with Guillermo in the custody proceeding. Thus, we view Guillermo's contention that the circuit court erred by determining that he had waived his superior right to custody of E.G.-L. and S.L. to be without merit. As we have concluded that Guillermo waived his superior right to custody, it is unnecessary to address Guillermo's contention of error as to the circuit court's determination that he was also unfit. The waiver of Guillermo's superior right to custody placed Maria on equal footing with Guillermo for the purpose of determining custody, and the circuit court properly applied the best interests of the child standard in awarding joint custody to Maria and Guillermo.

Guillermo also maintains that the circuit court erred by abdicating its responsibility under Kentucky Rules of Civil Procedure (CR) 52.01 to make findings of fact and conclusions of law. In particular, Guillermo asserts that the circuit court improperly adopted the proposed findings of fact and conclusions of law tendered by Maria.

-10-

It is well-established that CR 52.01 applies to an action heard by the court without a jury. *Anderson v. Johnson*, 350 S.W.3d 453 (Ky. 2011). CR 52.01 provides, in relevant part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment; . . . . Requests for findings are not necessary for purposes of review except as provided in Rule 52.04. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41.02.

A circuit court is not generally prohibited from delegating "the clerical task of drafting proposed findings of fact and conclusions of law[.]" *Bingham v. Bingham*, 628 S.W.2d 628, 629 (Ky. 1982). And, the circuit court is to exercise caution in its delegation to ensure that it "does not abdicate its fact-finding and decision-making responsibility under CR 52.01." *Id.* at 629. However, unless it is demonstrated that the findings of fact and conclusions of law are not the product of the circuit court's deliberation, such findings of fact and conclusions of law are sufficient to satisfy CR 52.01 and will not be disturbed on appeal. *Id.* at 629.

In the case *sub judice*, the circuit court instructed both parties to tender proposed findings of fact, conclusions of law, and judgment. Both parties complied and the court adopted those submitted by Maria. Guillermo does not explain how the circuit court abdicated its duties in this case given the evidence supports the court's findings as concerns waiver. Rather, Guillermo simply disagrees with the circuit court's findings of fact and conclusions of law. This alone is insufficient. Therefore, we conclude that Guillermo has failed to demonstrate that the circuit court improperly abdicated its fact-finding and decision-making responsibility in rendering its decision. *See Bingham*, 628 S.W.2d 628.

We view any remaining contentions of error to be moot or without merit.[3]

For the foregoing reasons, the judgment of the Montgomery Circuit Court is affirmed.

ALL CONCUR.

---

[3] Guillermo Gonzales also asserts that the Interstate Compact for the Placement of Children was improperly applied which resulted in preventing the children from being placed with him in February of 2017. This occurred in the dependency, abuse, and neglect proceedings in district court and is not a proper issue to be addressed in this appeal.

BRIEFS FOR APPELLANT:

Kaye L. Leighton
Mt. Sterling, Kentucky

BRIEF FOR APPELLEE MARIA
REBECCA MURILLO:

Jason Rapp
Lexington, Kentucky

BRIEF FOR APPELLEE PETRA
AZUCENA LOZANO-RODRIGUEZ:

Marsha Megan Hughes Richmond
Mt. Sterling, Kentucky