RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0443-MR

BRIANA GEBELL                                                        APPELLANT


APPEAL FROM BRACKEN CIRCUIT COURT
v.        HONORABLE JEFFERY L. SCHUMACHER, JUDGE
ACTION NO. 21-CI-00072


DEBBIE APPLEMAN; NICK
APPLEMAN; AND RYAN ROBERTS                                           APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  GOODWINE, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Briana Gebell ("Mother") appeals from the Bracken Circuit

Court's order denying her petition for sole custody of her biological daughter,

A.G.R. ("Child") and determining that permanent custody of Child should remain

with Nick and Debbie Appleman.

Because we do not believe Mother waived her superior right to custody by clear and convincing evidence, we reverse the circuit court's decision and remand the case to the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts of this protracted custody case are as follows: Child was born in January 2016. Child is the biological daughter of Ryan Roberts ("Father") and Mother. In August 2016, the Cabinet for Health and Family Services (the "Cabinet") filed a dependency, neglect, and abuse ("DNA") petition in Bracken District Court regarding Child against Father and Mother. The Cabinet based the petition on Mother's criminal charges and mental health issues and Father's substance abuse issues.

Shortly thereafter, the Bracken District Court ordered that it was temporarily placing Child in the custody of the Applemans. The relationship between the Applemans and Child is described in the temporary removal hearing order as "cousin to child's sister." The Applemans are also described as Child's paternal second cousins, and the record indicates that they raised Father.

At an adjudication hearing held in December 2016, the district court made a finding of dependency for both Mother and Father regarding Child. The court ordered that Child remain with the Applemans, and the Cabinet provided case plans to Mother and Father.

Over the next few years, the district court returned Child to Father's custody while Mother pursued in-patient treatment at a mental health facility. However, each time the court returned Child to Father's custody, the Cabinet would have to file a DNA petition against Father based on his alcohol abuse. The Cabinet filed a second DNA petition in 2017 against Father, alleging that Father was intoxicated while providing care to Child and her sister. Further, Father stipulated to the abuse or neglect of Child.

The Cabinet filed a third DNA petition in 2018 against Father, based on Father's arrest for aggravated DUI, speeding, reckless driving, failure to wear a seatbelt, failure to use a child restraint, failure to provide license and insurance, open container, and wanton endangerment. Child was in the vehicle at the time of Father's arrest. Father again stipulated to the neglect or abuse of Child.

Every time Father lost custody, Child was returned to the Applemans' temporary custody, as the record reflects that Mother remained hospitalized in a mental health facility throughout this time. On July 23, 2019, after a hearing, the district court granted the Applemans permanent custody through the third DNA action against Father. The district court's order was on an AOC-DNA-9 form, which does not list Mother as being present at the hearing and merely states that the "court orders permanent custody due to Father's lack of compliance."

In June 2021, Mother filed a motion in Bracken Circuit Court for custody of Child or in the alternative visitation time. After a hearing held in September 2021 before a domestic relations commissioner ("DRC"), the circuit court awarded Mother visitation with Child every other weekend, supervised by the maternal grandmother.

In April 2022, Mother filed a motion for unsupervised parenting time, to which the Applemans did not object. After a hearing held in July 2022 before a DRC, the court awarded Mother unsupervised parenting time every other weekend.

Mother filed a motion for sole custody on December 5, 2022, to which the Applemans and Father objected. The circuit court held a hearing in February 2023 and denied Mother's request for sole custody in an order entered on March 16, 2023. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. No Appellee Brief

At the outset, we note that Appellees Debbie Appleman, Nick Appleman, and Father failed to file a brief. As stated in Kentucky Rules of Appellate Procedure ("RAP") 31(H)(3):

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to

-4-

sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

Thus, this Court has the discretion to decline to exercise any of the options listed in RAP 31(H)(3). *See Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).[1] In this instance, we decline to specifically elect any options provided under RAP 31(H)(3).

### 2. **Standard of Review**

An appellate court may set aside a court's findings of fact only if they are clearly erroneous. Kentucky Rule of Civil Procedure ("CR") 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Whether or not the findings are clearly erroneous depends on whether there is substantial evidence in the record to support them. *B.C. v. B.T.*, 182 S.W.3d 213 (Ky. App. 2005). "If the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions made by the finder of fact. The legal conclusions are reviewed *de novo*." *L.D. v. J.H.*, 350 S.W.3d 828, 830 (citing *Brewick v. Brewick*, 121 S.W.3d 524, 526 (Ky. App. 2003)). Finally, "[i]f the factual findings are not clearly erroneous and the legal conclusions are correct, the only remaining question on appeal is whether the trial court abused its discretion in applying the law to the facts." *Id*. (citing *B.C.*, 182 S.W.3d at 219).

---

[1] While *Roberts* references Kentucky Rule of Civil Procedure 76.12(8)(c) – now RAP 31(H)(3) – the same concepts apply to the new rule.

### 3. **Discussion**

On appeal, Mother claims that the circuit court erred when it found that she had waived her "superior right to custody[,]" as discussed in *Moore v. Asente*, 110 S.W.3d 336, 359 (Ky. 2003). In Kentucky, it is axiomatic that "a parent's superior right to custody, as opposed to a non-parent, is paramount[.]" *Diaz v. Morales*, 51 S.W.3d 451, 454 (Ky. App. 2001). Indeed, "[p]arents of a child have a fundamental, basic and constitutional right to raise, care for, and control their own children." *Vinson v. Sorrell*, 136 S.W.3d 465, 468 (Ky. 2004) (footnote citation omitted).

Accordingly, a non-parent must have standing for a court to usurp the parent's superior right to custody, as "we would necessarily abrogate those [superior] rights if we were to resolve custody disputes on a 'best interest of the child' standard after allowing the non[-]parent to obtain standing by mere possession of the child[.]" *Moore*, 110 S.W.3d at 358 (footnote citation omitted).

Specifically, a non-parent may obtain standing under Kentucky law by either being a *de facto* custodian or a non-parent custodian under circumstances presenting clear and convincing evidence that the parent is either unfit or has waived his or her superior right to custody. *Id.* at 359.

The first of those exceptions – the *de facto* custodian – exists by virtue of KRS 403.270(2). Under that statute, a *de facto* custodian is one who has been:

> shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who within the last two (2) years has resided with the person for an aggregate period of six (6) months or more if the child is under three (3) years of age and for an aggregate period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

KRS 403.270(1)(a). Once the court finds clear and convincing evidence that the person seeking custody is a *de facto* custodian, it may utilize the best interest of the child standard to determine custody. *Baker v. Combs*, 248 S.W.3d 581, 584 (Ky. App. 2008). Here, the record is void of any request by the Applemans to be declared *de facto* custodian or any order of the court naming them as such. Therefore, this exception does not apply.

Mother argues that because the Applemans did not obtain the status of *de facto* custodian, they lack standing to defend the custody issue, and therefore the trial court should have, as a matter of law, awarded Mother custody on that basis alone. This argument has no merit as it ignores the second type of status for standing in custody issues. In *Mullins v. Picklesimer*, 317 S.W.3d 569 (Ky. 2010), our highest court was tasked with deciding a custody issue between a biological mother and her former same-sex partner. The Court found that although the former partner did not qualify as a *de facto* custodian she nonetheless had standing

-7-

pursuant to KRS 403.822 as a "person acting as a parent[.]" *Id.* at 576. In pertinent part KRS 403.800 states:

> (13) "Person acting as a parent" means a person, other than a parent, who:
>
>> (a) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding; and
>>
>> (b) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state

*Id.* It is undisputed, in the case *sub judice*, that Child resided with the Applemans from the age of six months old. It is further undisputed that the Applemans were granted permanent custody thereby meeting the standard under KRS 403.822 to be deemed "person acting as parent," or non-parent custodian, and conveying standing to challenge Mother's quest for sole custody.

When the non-parent has standing as a person acting as a parent but does not qualify as a *de facto* custodian, the non-parent must prove one of the following to be entitled to custody: "(1) that the parent is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence." *Mullins*, 317 S.W.3d at 578 (footnote and citation omitted). Once either waiver or unfitness is

proven by clear and convincing evidence, the court may determine custody in accordance with the child's best interest. *Moore*, 110 S.W.3d at 360.

In *Vinson*, the Kentucky Supreme Court laid out certain factors relevant to determining whether a parent has waived his or her superior custody rights. 136 S.W.3d at 469-70 (footnote citation omitted).

> Those factors are length of time the child has been away from the parent, circumstances of separation, age of the child when care was assumed by the non-parent, time elapsed before the parent sought to claim the child, and frequency and nature of contact, if any, between the parent and the child during the non-parent's custody.

*Id.* at 470 (footnote citation omitted). Moreover, "[t]he common definition of a legal waiver is that it is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Greathouse v. Shreve*, 891 S.W.2d 387, 390 (Ky. 1995) (quoting *Barker v. Stearns Coal & Lumber Co.*, 163 S.W.2d 466, 470 (Ky. 1942)).

In the instant case, the circuit court, in its order, appeared to be applying the "best interest of the child" factors as its decisional basis rather than the "clear and convincing evidence" standard required in custody disputes between parents and non-parents. The only finding the circuit court made as to whether Mother had waived her superior right to custody was one short sentence stating

that Mother had been "absent and/or non-involved for the majority of the minor child's life thus far[.]".

However, the record fails to demonstrate by clear and convincing evidence that Mother expressly or intentionally relinquished her parental right to custody of her child. Mother presented evidence that she had remained in Child's life the entire time that Child had been in the Applemans' care. She testified that she had visits with Child even while in treatment at a mental health facility. Additionally, as soon as she was in a more stable position with her mental health, Mother filed motions requesting – and was granted – both supervised and unsupervised visitation with Child. Mother then moved for sole custody.

No evidence was put forth that Mother abandoned Child at any point, and certainly not in the years immediately preceding the custody hearing. As to the "circumstances of separation[,]" Child was removed from Mother's care by the Cabinet in the DNA action and did not of her own volition give Child to the Applemans' care. *Vinson*, *supra*. Overall, the record reflects that Mother remained involved in Child's life as much as she was able, given her legal status at different points throughout Child's time with the Applemans. These actions are inconsistent with Mother's waiver of her superior right to custody of Child. Thus, the court's finding regarding Mother's waiver of her superior right to custody is clearly erroneous, and we are entitled to set aside such finding under CR 52.01.

-10-

The governing case law mandates that this Court end its review here although the analysis regarding non-parent custody has two factors, waiver of the parent's rights or the unfitness of the parent. The *Vinson* court, facing an almost identical scenario as the case at hand, opined that it could not review the issue of father's fitness because the issue was not preserved below.

> As the trial court did not find [Father] to be unfit, we may assume that there was insufficient evidence of unfitness or that the [non-parent custodian] abandoned the claim. In either event, whether [Father] was unfit was not preserved for appellate review. As such, there is no basis to remand the question of unfitness to the trial court.

136 S.W.3d at 471. As in *Vinson*, the court in the case *sub judice* did not opine on whether Mother was unfit, and we must follow the directives of our Supreme Court. However, this Court finds the analysis of the dissent in *Vinson* compelling and worth restating here. The dissent points out that the non-parent custodian was the successful party at the trial level. The trial court decided in their favor when it concluded Father waived his superior rights. Having won the issue, the dissent believed it illogical for the non-parent custodian to then ask the court for findings on the separate issue of father's fitness.

> It seems that to require successful litigants, such as the Vinsons, who were awarded custody by the trial court, to seek additional findings regarding the unfitness of the father when they prevailed on the waiver issue in the trial court invites judicial waste. . . . When, as in the present case, there exists a legitimate question as to the fitness of a parent seeking custody, the court has an obligation to

-11-

> consider the issue in determining custody. The court has
> a role in protecting the welfare of this child.

*Id.* at 472 (Johnstone, J., concurring in part and dissenting in part). However, this is not the current state of the law. As the circuit court in the case *sub judice* did not find Mother to be unfit, and the Applemans did not pursue a finding on the matter, the analysis ends here. Following precedent, the question of Mother's unfitness was not preserved for appellate review. Without a finding that the parent is unfit or without clear and convincing evidence of a knowing and voluntary surrender of parental rights, a parent is entitled to custody. *Diaz*, *supra*.

## CONCLUSION

Based on the foregoing, we reverse the Bracken Circuit Court's order denying Mother sole custody. We remand to the circuit court to enter an order consistent with this Opinion.

ALL CONCUR.


BRIEF FOR APPELLANT:             NO BRIEF FOR APPELLEE.

Rachel M. Wilhite
Covington, Kentucky

Ashley Sexton
Covington, Kentucky